[Civ. No. 3921. Third Appellate District.—December 20, 1929.]

L. F. INGLEDUE, Appellant, v. L. DAVIDSON, Respondent.

H. T. Morrow and Hyams & Himrod for Appellant.

Gibson, Dunn & Crutcher and Norman S. Sterry for Respondent.

JAMISON, J., *pro tem.*—Appellant brought this action to recover damages for injuries sustained by him from an explosion of gas. From a judgment rendered in favor of respondent upon a directed verdict he has appealed. It appears from the evidence that on the sixth day of May, 1922, appellant went to respondent's restaurant about noon for a lunch. He had made his order and was sitting on a stool at the lunch-counter facing a large mirror that was attached to and rested against the wall some six feet in front of and to the west of him. This mirror was from twenty-five to thirty feet long and about six feet wide and rested upon a shelf, the bottom of the mirror being about six inches higher than the lunch-counter, the space between the shelf and the lunch-counter being used by the waiters in passing back and forth while waiting upon the lunch-counter customers. Immediately south of the south edge of said mirror and twelve or fourteen inches therefrom was a coffee urn, which was heated by a small gas jet. Shortly after appellant had taken his seat at the lunch-counter, and while waiting for his order to be filled, a small flame, several inches wide and a few inches high, shot up from the south edge of the mirror, which increased in size until it was six or eight inches high. A passing waiter struck at it with a cloth or with his hand and this having no effect upon it, he started to get some water to pour on it. Just then an explosion took place that forced the mirror from its place and it fell for-

ward on the lunch-counter. Appellant was thrown from his seat on the stool to the floor and suffered injuries that sent him to the hospital and that confined him to his bed for several weeks and compelled him to expend sums for physician's, nurse's, hospital and other bills.

It appears that immediately behind the mirror and concealed from observation by it was a gas-pipe, one-half inch in diameter, that was not being used for any of the purposes of the restaurant at the time of the explosion. This pipe was eight or ten feet long and had an ell at the upper end that extended toward the back of the mirror. The lower end connected with the main in the basement that furnished gas to the restaurant and it had no cut-off that would prevent the flow of gas into it when gas was turned on for the use of the restaurant. The upper end of this unused gas-pipe extended from four to six inches above the level of the shelf upon which the mirror rested and this pipe was between the mirror and a brick wall, but not imbedded in the wall.

Appellant knew of the existence of this pipe, at least to the extent of knowing that it connected with the main house pipe in the basement, although it is not shown that he knew that it extended up to the point behind the mirror.

Immediately after the explosion a flame several inches high was seen coming from this unused pipe and this flame continued to burn until the gas was cut off from the restaurant.

It appears from the evidence that the gas which caused the explosion came from this unused pipe, which was either not plugged or so insecurely plugged that it permitted gas to escape from it. There was a brick wall behind the mirror and behind this pipe which had pockets in it, were places where brick had been left out, or from which they had been removed, and these pockets apparently had become filled or partly filled with this leaking gas, and some of this gas found its way along and outside of the edges of the mirror and became ignited and this ignition was communicated to the gas in the pockets and thereupon the explosion ensued.

Respondent had occupied the premises in which he was conducting the restaurant since December 20, 1920, and at the time of the explosion was occupying said premises as lessee under a lease which provided that he should keep the leased premises in good order and condition at his own expense. The unused pipe had been placed in said leased

premises before the occupancy thereof by appellant, and prior to the explosion had not been used by him.

Respondent testified that his weekly gas bill from the first of the year until the week ending March 20th of that year ran from $36.20 to $39.92; that for the week ending on March 20th the bill was $42.12 and thereafter his weekly gas bills increased until on May 1st it was $45.90. He also testified that the defendant, the Los Angeles Gas and Electric Corporation, was furnishing the gas for his restaurant, that during the latter part of March he complained to the gas company regarding the increase in his gas bills and was requested to file a complaint; that in April, 1922, he called at the office of the gas company and stated to its employee he found there that he was having the highest gas bills he ever paid, that he did not see any reason why this should be the case, that he did not know what was the matter, that said employee suggested that there might be water in the meter, that the next day an employee of the gas company came to the restaurant and changed the meter.

The gas bill, after the meter was changed, was still more, that on Tuesday or Wednesday before the following Saturday, the day upon which the explosion took place, respondent again called at the office of the gas company and said to the employee in charge of the office, "I know there is something wrong there somewhere and I wish you would send someone down and find out what it is." On Thursday preceding the explosion, two employees of the gas company came to the restaurant and started to take the meter out. Respondent told them to wait until he called up the office of the gas company. He then stated to the employee who answered on the telephone that he didn't want another meter, but wanted someone to come down and investigate the matter. The employee asked him if he did not want the meter, and when respondent informed him that he did not want it, the employee said something that sounded to respondent like an invitation to betake himself into the realms of Pluto.

Appellant produced as a witness Harry J. Griffin, captain of the fire department of Los Angeles, who testified that he went to the place of explosion, that when he arrived there he saw the mirror lying on the lunch-counter and a flame coming from the gas-pipe that stood behind where the mirror had been, that he immediately had the gas that supplied the

restaurant shut off, that he saw respondent there and asked him what he thought caused the explosion and that respondent replied that he had been smelling gas around there for four or five days and had been trying to get it fixed.

▇ Appellant was an invitee on the premises of respondent at the time of the explosion. The owner or occupier of a building must exercise ordinary care to render the premises reasonably safe to persons whom he induces to come thereon by invitation, express or implied. (Thompson on the Law of Negligence, p. 146.) And, as such invitee, respondent owed appellant the duty of maintaining the property in a safe condition and of exercising reasonable care in protecting him from injury. (*Madigan* v. *O. H. Hale & Co.,* 90 Cal. App. 151 [265 Pac. 574]; *Goldsteen* v. *Healey,* 187 Cal. 206 [201 Pac. 462]; *Giannini* v. *Campodonico,* 176 Cal. 548 [169 Pac. 80]; *Oles* v. *Kahn Bros.,* 81 Cal. App. 76 [253 Pac. 158].)

. ▇ There was evidence on the part of plaintiff that for some time before the explosion respondent knew that something was wrong with the gas that was being furnished to his restaurant; that for some unaccountable reason his gas bills were increasing. He had the meter changed and still the increase continued. As a cause for the explosion he stated to the captain of the fire department that he had smelled gas for four or five days prior to its occurrence. He did not have his gas-pipes examined to ascertain from what source the smell of gas came, though he must have known that this continuing odor of gas indicated a leakage, but continued to have the gas turned on though he must have realized that a continual leakage of gas would likely result in an explosion.

In the case of *Perera* v. *Panama-Pacific Int. Expos. Co.,* 179 Cal. 63 [275 Pac. 454], the court said: ''It is now settled that the right of a court to direct a verdict is, with regard to the condition of the evidence, absolutely the same as the right of a court to grant a nonsuit; and also that a court may grant a nonsuit only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff.'' (See, also, *Burgesser* v. *Bullock's,* 190 Cal. 673 [214

Pac. 649]; *McCarthy* v. *Pacific Elec. Ry. Co.*, 82 Cal. App. 503 [255 Pac. 868].)

And in this last-named case, the court said that the rule as to directed verdicts is not that a verdict may be directed whenever the evidence is such that upon motion the court would grant a new trial. For a court may grant a new trial, even when there is substantial evidence to sustain the verdict, if it believes the evidence preponderates against the verdict, but applies only when the evidence is wholly insufficient to support the verdict, and where upon the whole evidence the court, of its own motion, would be compelled to set the verdict aside as unsupported by the evidence.

From the foregoing facts the jury could have been warranted in the belief and inference that prior to the explosion the respondent was put upon notice that there was a leakage in his gas-pipe or pipes and that his failure to cause an examination of his gas-pipes and the stoppage of such leak and the continued use of the gas in his restaurant while such condition existed were the proximate causes of the explosion.

We are of the opinion that the evidence tending to prove that the explosion was caused by the negligence of the respondent was sufficiently substantial to require the submission of the case to the jury.

■ Appellant claims that the doctrine of *res ipsa loquitur* applies to the facts of this case. In his complaint he does not plead negligence in general terms, but sets out the specific acts of respondent upon which he bases his allegations of negligence. By so doing, he has barred himself from relying upon this principle of the law. The general rule is that where the plaintiff in his complaint gives the explanation of the cause of the action, that is to say, where the plaintiff, instead of relying upon a general allegation of negligence, sets out specifically the negligent acts or omissions complained of, the doctrine of *res ipsa loquitur* does not apply. (*Connor* v. *Atchison etc. Ry. Co.*, 189 Cal. 1 [26 A. L. R. 1462, 207 Pac. 378]; *Marovich* v. *Central Cal. Traction Co.*, 191 Cal. 295 [216 Pac. 595].)

The judgment is reversed.

Thompson (R. L.), J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 18, 1930, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 17, 1930.

All the Justices present concurred.

