[Civ. No. 5075. Third Appellate District.—December 1, 1934.]

JOHN J. KELLER, as Administrator, etc., Appellant, v. THE PACIFIC TELEPHONE AND TELEGRAPH COMPANY (a Corporation), Respondent.

514

H. L. Preston and Frank W. Taft for Appellant.

Pillsbury, Madison & Sutro, Hale McCowan, Jr., Alfred Sutro, Eugene M. Prince and Samuel L. Wright for Respondent.

THOMPSON, J.—The plaintiff has appealed from a judgment rendered against him in accordance with the verdict

of a jury which was returned in a suit for damages for the death of Joseph Dempsey as the result of alleged negligence on the part of the defendant in maintaining a defective telephone pole which broke and killed Mr. Dempsey when his automobile backed across a street and ran into the pole. It is asserted the instructions which were given to the jury were prejudicially erroneous.

The telephone company erected and maintained in the sidewalk space, ten inches from the curbing of a street in Willits, a square-sawed nine-inch telephone pole 25 feet in height. This pole was erected by the company in 1924, but it had been previously used, although the evidence does not show how old it was. The outer portion of the pole was decayed near the ground. The evidence indicates that it still contained about six inches of firm timber on the inside of the pole. It was equipped with cross-arms and carried several insulated wires. Apparently it was braced in the usual manner by means of guy-wires.

At 8 o'clock in the evening of October 8, 1932, the deceased parked his Chevrolet roadster on the opposite side of Central Street from the point where the defective pole stood and about 90 feet distant therefrom. The street, which was 54 feet in width, was surfaced with the crown about eight inches higher than the lowest point adjacent to the pole. The curbing at that point was only about four inches high. Seated by the side of Mr. Dempsey, at the time he parked his car, were his wife and Mrs. White. Dempsey stopped for a brief business interview with a man who lived in that vicinity on Central Street. He expected to be absent from the car but a few moments. He shut off his engine, shifted the lever to neutral gearing, and got out, leaving his wife and Mrs. White seated in the car. After he left, the ladies got out of the machine and went to the house of Mrs. White, which was near by. Mrs. Dempsey sat in the middle of the front seat, with a knee on either side of the gear lever. When she left the machine she threw the clutch into reverse gearing, so that she could get out more easily. The battery of this car was weak. It was necessary to use the crank to start the engine. For the sake of convenience, the crank was left on the floor of the car near the lever. It was dark. When Dempsey came back the ladies had not yet returned. He

was not aware of the fact that his wife had shifted the gear lever from neutral, where he left it, to reverse. He reached into the car, and securing the crank, he went to the front of the machine, and proceeded to start the engine by cranking it. The car immediately started to back away from him. He ran after it, and jumping on the running-board, tried to shift the lever back to neutral. Whether he succeeded in doing so, is doubtful. The machine continued to run backward in an arc toward the opposite side of the street. The rear end struck the defective pole, breaking it off near the ground and at another point toward the top of the pole. A part of the pole fell across the machine, striking Mr. Dempsey and killing him. The only substantial damage which was done to the machine was that the spare tire was broken from the frame to which it was attached at the rear end.

Upon proceedings duly had, an administrator of the estate of Joseph Dempsey was appointed and qualified. This suit for damages was brought by the administrator against the telephone company for negligence in maintaining the defective pole. The suit was tried with a jury which returned a verdict against the plaintiff. A judgment was rendered accordingly. From that judgment the administrator has appealed.

It is contended by the appellant that he was not accorded an impartial trial for the reason that the court gave to the jury several prejudicially erroneous instructions. The respondent asserts that the giving of erroneous instructions was immaterial because its motion for a nonsuit should have been granted for the reasons that there is no substantial evidence of its negligence in maintaining the telephone pole in question, and because the deceased was guilty of contributory negligence, as a matter of law, in cranking his machine without first examining to ascertain that the gear lever was not safely placed in neutral, and by failing to set his brakes when he parked his car, as required by section 137 of the California Vehicle Act.

■ We are of the opinion that the question of negligence on the part of the defendant, in maintaining the defective telephone pole under the circumstances of this case, was a problem which was properly submitted to the jury for determination. It was an old pole which was evidently

badly deteriorated. In spite of the fact that it still contained six inches of sound timber nearest the center, it was decayed at the surface, near the ground, to a depth of one and a half inches. The evidence shows that the point of a pick was thrust into the pole, at that point, to that depth. The question as to whether a reasonable person should have anticipated under such circumstances that the pole was in a dangerous condition was a proper problem for the consideration of the jury.

The defendant is not charged with negligence in maintaining the pole at an improper position in the sidewalk space. The particular charge is that it maintained a defective pole which it should have anticipated would be likely to endanger persons or property. It has been held that it is the duty of a telephone company to select and maintain sound poles which may be reasonably expected to withstand ordinary strain of weather conditions or other ordinary tests of strength, and to that end it is the duty of such companies to make reasonable inspection of its poles to ascertain that they are safe. (8 Thompson's Comm. on Neg., p. 185, sec. 1244.) ▮ In the present case it appears that the surface of the pole in question was rotted at and near the point where it entered the ground, to a depth of approximately one inch and a half. It still contained about six inches of timber at the center which were not decayed. It may, however, be a legitimate question to submit to a jury, as to whether the interior timber of a pole which is so rotted at the surface may not also be deteriorated and weakened thereby to such an extent that it is more brittle and dangerous on that account. We are of the opinion that it is a proper question to submit to the jury as to whether the pole would have broken as a result of the blow received from the automobile under the circumstances of this case, if it had been reasonably sound throughout.

▮ We are also of the opinion the evidence fails to show that Mr. Dempsey was guilty of contributory negligence as a matter of law. He did not violate section 137 of the California Vehicle Act. That section reads: "No person having control or charge of a motor vehicle shall allow such vehicle to stand on any public highway *unattended* without first effectively setting the brakes thereof and stopping the motor of said vehicle."

This section applies only to persons who leave their automobiles parked without an occupant therein. It is only the machine which is left *unattended* that is required to have the brakes effectively set. When Mr. Dempsey left his machine, he shifted the gear lever into neutral, turned off his engine, and went on a brief mission, leaving his wife and Mrs. White sitting in the machine. It may therefore not be said that he violated the provisions of section 137 of the California Vehicle Act. ■ Nor may it be said, as a matter of law, that he was guilty of contributory negligence in cranking the engine, under the circumstances of this case, without first examining the apparatus to ascertain that the clutch was safely shifted into neutral. He carefully placed the clutch in neutral when he left the car, from which he was absent only a few moments. He was not aware of the fact that his wife had afterwards shifted the clutch to reverse when she got out of the car. She did not see him after he left the machine and consequently had no opportunity to tell him she had done so. It is a question for the jury to determine whether, as a reasonable person, he should have anticipated that someone might have changed the clutch from neutral to reverse during the brief period of time in which he was absent. The ladies were not there when he returned. It was dark and he evidently could not see the position of the lever as he reached into the car for the crank which he had left on the floor near the clutch. It certainly would have been fortunate if he had taken the precaution to examine the clutch before he proceeded to crank the engine. But under the circumstances of this case we are not prepared to hold, as a matter of law, that the exercise of reasonable caution would have required him to do so. It does not seem unreasonable that he should have assumed that the clutch remained in the same position in which he left it a few moments before he cranked the engine. His conduct in that respect was therefore also properly submitted to the jury for determination. ■ It follows that the motion for a nonsuit was properly denied.

We have carefully examined the entire charge to the jury and we are impelled to hold that it contains several reversible instructions.

This case illustrates the difficult task with which a trial judge is frequently confronted requiring him while the trial is proceeding to pass upon a large number of instructions which have been handed to him shortly before the case goes to the jury. The ideal instructions should be clear, concise and free from argumentation. Nearly eighty instructions were given to the jury in this case. Each side offered approximately the same number of instructions. Three or four of the instructions which were given to the jury at the request of the defendant appear to belong to that class which have been frequently condemned as "formula" instructions. In the case of *Douglas* v. *Southern Pac. Co.*, 203 Cal. 390 [264 Pac. 237, 238], the Supreme Court said in that regard, "the authorities are legion to the effect that a so-called 'formula' instruction must contain all the elements essential to a recovery, and the absence of any one of such elements may not be compensated for nor cured by a reference thereto in other instructions correctly and fully stating the law."

To the same effect are the following authorities: *Ebrite* v. *Crawford*, 215 Cal. 724, 729 [12 Pac. (2d) 937]; *Jordan* v. *Great Western Motorways*, 213 Cal. 606 [2 Pac. (2d) 786]; *Elsey* v. *Domecq*, 114 Cal. App. 42, 51 [299 Pac. 794]; *Queirolo* v. *Pacific Gas & Elec. Co.*, 114 Cal. App. 610 [300 Pac. 487]; *Dodds* v. *Gifford*, 127 Cal. App. 629, 634 [16 Pac. (2d) 279]; *Bartolini* v. *Andrioli*, 123 Cal. App. 350 [11 Pac. (2d) 66].

The appellant assigns seven of the instructions which were given to the jury at the request of the defendant, as prejudicially erroneous. Several of these challenged instructions were reread to the jury, at its request for further instruction on the subject of contributory negligence. This request was made some time after the jury first retired to deliberate on its verdict. Contributory negligence was the only subject upon which the jury desired further instructions. After receiving that final charge, the jury retired for further deliberation and later returned a verdict in favor of the defendant. It therefore seems probable that the jury was prejudiced by these very erroneous instructions on the subject of contributory negligence.

Defendant's instruction number 28 invades the province of the jury as the sole judges of the weight and

sufficiency of the evidence. It is misleading and erroneous. It reads as follows, ''The mere fact that the defendant erected and maintained *the pole involved in this case*, does not mean that the defendant is negligent, and does not entitle the plaintiff to recover damages from the defendant.''

The very gist of the liability of the defendant, if any such liability does exist in this case, is the maintaining of an alleged decayed and dangerous telephone pole. The vital question for the jury to determine was whether the defendant knowingly maintained a pole in such decayed and weakened condition that a reasonably prudent person should have known it was dangerous to persons or property. But in effect the jury was told in this instruction that the maintaining of this very pole in the condition in which it existed at the time of the accident, as a matter of fact, did not constitute negligence, and therefore did not entitle the plaintiff to recover damages. It was equivalent to informing the jury that the evidence is insufficient to support the plaintiff's charge of negligence. (*Sullivan* v. *Market Street Ry. Co.*, 136 Cal. 479 [69 Pac. 143].) This was an invasion of the province of the jury.

◼ Defendant's instruction number 30, which was given to the jury, has no application to the facts of this case, since the deceased did not leave his automobile parked on the street ''unattended'', but, on the contrary, he left it in charge of his wife and another lady who were seated in the machine at the time he went away. The instruction is therefore inapplicable, misleading and prejudicial. It reads, ''I instruct you that the Vehicle Act of this state, in force at the time of this accident, provided that 'no person having control or charge of a motor vehicle shall allow such vehicle to stand on any public highway *unattended* without first effectively setting the brakes thereon and stopping the motor of said vehicle'. If you find from the evidence that the decedent allowed this automobile to stand on Central street without either first effectively setting the brakes thereon or stopping the motor of said vehicle, and that such omission proximately contributed to his death, then your verdict must be for the defendant.''

This is one of the instructions which was read to the jury at their request, the second time. Since the brake was not set when the deceased left his automobile parked at the side of the street, the jury must have gained the im-

pression from this instruction that he was therefore necessarily guilty of contributory negligence in failing to set his brake in violation of the' statute and that, since the machine would probably not have backed across the street when it was cranked, if the brake had been set, this omission on his part was absolutely fatal to plaintiff's right to recover. The evidence is uncontradicted that he did not leave the machine ''unattended''. The law therefore did not require him to set the brake when he left the machine. The court definitely informed the jury that if the deceased allowed his automobile to stand on Central Street without effectively setting the brakes and if that omission contributed to his accident, the plaintiff absolutely could not recover damages, and their verdict must be in favor of the defendant. The statute had no application to the undisputed facts of this case. It should not have been given to the jury. It was twice read to the jury and must have been a persuasive reason for them to have decided that the deceased was thus guilty of such contributory negligence as precluded the plaintiff from recovering a judgment. It was prejudicially erroneous.

In defendant's instruction number 32, the court charged the jury that if they found that the deceased cranked his engine without first ascertaining that the gear lever was in a neutral position, and that an ordinarily prudent man would not have done so without that precaution, or ''*that any other conduct or omission* of decedent proximately contributed to his injury'', then their verdict must be in favor of the defendant. We may assume the preceding italicized language was inadvertently used. But it is unfortunate for the reason that it informs the jury that *any* omission of the deceased which contributed to his accident is fatal to the plaintiff's right to recover, whether it amounts to negligence or not. Of course, it is only the omission of such acts as would amount to negligence, or the lack of ordinary care, that would defeat plaintiff's right of recovery on the ground of contributory negligence. This instruction served to emphasize the error which was contained in instruction number 30. It is only such acts as amount to an absence of ordinary care which will preclude a plaintiff from recovering damages on the doctrine of contributory negligence. (19 Cal. Jur., p. 648, sec. 77.)

■ Defendant's instruction number 37, which was given to the jury, is a defective formula charge which is misleading. It reads, "If you find that the decedent drove the automobile involved in this case against the pole involved in this case, or allowed said automobile to collide with said pole and thus caused the pole to break and fall, and if you also find that said pole was located in such manner and at such point in the public highway as not to incommode the public use of such road or highway, then I instruct you that as a matter of law the decedent was contributorily negligent and if such negligence proximately caused his death, your verdict must be for the defendant."

The preceding instruction omits any reference to the question of whether the pole was dangerously decayed or defective. The chief defect in this instruction, however, is that it informs the jury that if the deceased "allowed said automobile to collide with said pole", he was guilty of contributory negligence which precludes the plaintiff's right of recovery. It omits the element of negligence. It fails to inform the jury that the conduct of the deceased which resulted in his machine colliding with the pole must have amounted to negligence on his part, in order to defeat his right to damages on the ground of contributory negligence. The language of this instruction is peculiarly unfortunate since the undisputed evidence is that the deceased was actually present and apparently he was using his best efforts to stop the runaway car and prevent it from hitting the pole. This instruction also invades the exclusive right of the jury to determine whether the striking of the pole by the automobile was due to the fault of the deceased.

■ Defendant's instruction number 39 is another defective formula instruction. After quoting the principle announced in section 1963, subdivision 4, of the Code of Civil Procedure, that it is presumed "a person takes ordinary care of his own concerns", the instruction asserts this presumption will be effectively dispelled if the jury should find that the deceased cranked his engine while the gear lever was in reverse, if a reasonably prudent person would not have so cranked the engine. This instruction fails to refer to the plaintiff's theory that the deceased was ignorant of the fact that his gear lever had been changed from neutral to the reverse. The jury should have been given the opportunity to pass upon whether his ignorance of that

fact was excusable or not under the circumstances of this case. That privilege was denied to the jury by the terms of this instruction. It is therefore erroneous.

The defendant's instruction number 40, with relation to the doctrine of *res ipsa loquitur,* is inapplicable to the facts of this case, and should not have been given to the jury. It is misleading and must have been prejudicial. It reads, ''There is a rule of law known as *res ipsa loquitur,* which translated literally means 'The thing speaks for itself.' This rule means that when the thing which caused the injury is shown to have been under the management and exclusive control of the person operating it, and the accident is such as in the ordinary course of things does not happen if those who have the management and control use proper care, it affords reasonable evidence, in the absence of explanation by the person using it, that the accident arose from want of ordinary care upon the part of the person using it; and I instruct you that if you find that the decedent, while driving or operating his automobile, caused or permitted the same to run upon the sidewalk, and this would not have happened in the ordinary course of things if the decedent used proper care, the doctrine of *res ipsa loquitur* is applicable to this case, and that the decedent's act was *prima facie* negligent.''

The doctrine of *res ipsa loquitur* is applicable only in the absence of actual knowledge of just how an accident occurs. It then casts the burden of furnishing an explanation of the cause upon him who has the exclusive control of the machine and who is therefore presumed to be better qualified to furnish the necessary evidence of the cause of the accident.

The application of the doctrine of *res ipsa loquitur* was explained in the case of *Jianou* v. *Pickwick Stages System,* 111 Cal. App. 754 [296 Pac. 108, 109], as follows, ''It is the established rule that one who relies upon the doctrine of *res ipsa loquitur* to establish a cause based upon negligence, must allege merely general acts of negligence. Upon the contrary, when one alleges specific acts of negligence upon which he relies, the pleading refutes the theory of *res ipsa loquitur*. The very hypothesis of the doctrine is that the plaintiff has no knowledge of just what caused the accident, and that since the instrumentality by means of which the accident occurred is solely within the control of the

defendant, negligence will be inferred upon proof of a *prima facie* case, in the absence of an adequate explanation on the part of the defendant exempting him from liability. (*Connor* v. *Atchison, T. & S. F. R. Co.*, 189 Cal. 1 [26 A. L. R. 1462, 207 Pac. 378]; *Ingledue* v. *Davidson*, 102 Cal. App. 697 [283 Pac. 837]; 19 Cal. Jur. 713, sec. 127.)''

We may assume the same principle will apply when a defendant under similar circumstances seeks to defeat a liability against himself on the ground that the plaintiff is guilty of contributory negligence, the nature of which is unknown to the defendant.

In the present case both the answer of the defendant and the uncontradicted evidence show exactly what caused the automobile to back across the street and run into the pole. The doctrine of *res ipsa loquitur* is therefore inapplicable to the circumstances of this case. ■ Moreover, this instruction improperly informed the jury that if it found that the deceased ''caused or permitted'' his automobile ''to run upon the sidewalk'', and that that result ''would not have happened in the ordinary course of things'', that this would constitute a *prima facie* showing of negligence on the part of the deceased. It is apparent that the doing of a certain thing or permitting it to be done in an unusual manner or ''out of the ordinary course of things'', neither invokes the doctrine of *res ipsa loquitur* nor renders the person guilty of negligence even to a *prima facie* degree. Merely because an act is performed in an unusual way does not necessarily mean that no one but the performer knows how it is done. ■ Moreover, in attempting to apply the doctrine of *res ipsa loquitur* to the facts of this case, the defendant failed to instruct the jury that if the actual cause of the accident did appear in evidence, then this doctrine would not apply, and under such circumstances the decedent would not be *prima facie* guilty of contributory negligence. The evil of this omission is apparent from the fact that the evidence conclusively shows there was no mystery regarding the cause of the automobile's unexpected journey across the street into the telephone pole. It was because the clutch had been shifted to reverse gear. Clearly this instruction was inapplicable to the facts of the case, and should not have been given.

■ Defendant's instruction number 41 is based on the theory that the deceased voluntarily permitted his automo-

bile to run on to the sidewalk space and strike the pole, which is contrary to the undisputed evidence. It is not applicable to the evidence in this case and it is therefore misleading and erroneous. It reads as follows: "If you find from the evidence in this case *that the decedent caused or permitted* his automobile to go upon the sidewalk of Central Street, then I instruct you that such an act of decedent is presumptive evidence of his negligence."

If it was intended by this instruction to inform the jury that a failure to reasonably inspect the condition of the gear lever before cranking the machine would be equivalent to "permitting his automobile to run upon the sidewalk", and therefore this omission would amount to presumptive negligence, the hypothetical statement of facts is fatally defective in omitting all reference to any purported *negligent* acts. This is really an erroneous formula instruction which invades the province of the jury as the sole judges of the weight and sufficiency of the evidence. If it does not contemplate these alleged negligent omissions, it is contrary to the undisputed evidence that the deceased used his best effort to prevent the machine from running on to the sidewalk against the pole.

The judgment is reversed and the cause is remanded for a new trial.

Plummer, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 31, 1934, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 28, 1935.

Shenk, J., and Thompson, J., voted for a hearing.