[Civ. No. 21967.   First Dist., Div. Two.   Nov. 15, 1965.]

EARLENE ENGLAND, a Minor, etc., et al., Plaintiffs and Appellants, v. MAPES PRODUCE COMPANY, Defendant and Respondent.

Hagar, Crosby & Rosson, Edwin A. Heafey, Jr., and Richard G. Logan for Plaintiffs and Appellants.

Carroll, Davis, Burdick & McDonough, J. D. Burdick and Gerald P. Martin, Jr., for Defendant and Respondent.

AGEE, J.—A stolen pickup truck in which the owner had left the ignition key was so negligently driven by the thief that it collided with the auto of plaintiffs, severely injuring them. In this resulting personal injury action, judgment was entered in favor of the truck owner, defendant Mapes Produce Company, and plaintiffs appeal therefrom.

The crucial issue presented to the trial court for its determination and the *only one* actually in dispute at the trial, is stated in the pretrial order as follows:

"4. Negligence of the defendant Mapes Produce Company in leaving the key in an unattended vehicle with the foreseeability that one of its Mexican laborers unqualified to drive and/or intoxicated might have taken said vehicle and operated it upon the public highways of the State."

The trial court, sitting without a jury, concluded from its findings of fact that Mapes "could not reasonably be required to foresee the unauthorized taking of one of said vehicles by a bracero [in its employ], . . ."

Plaintiffs state that "The trial court's findings of fact are in no way challenged on this appeal" but that these facts, as so found, establish Mapes' liability *as a matter of law*. A summary of the findings follows.

*Findings.* Mapes was engaged in farming operations near the town of Brentwood, Contra Costa County, and as a part thereof owned and operated five pickup trucks; during August 1960, as part of such operations, Mapes had in its employ approximately 100 braceros; these were provided board and room by Mapes at a labor camp located on private property in the exclusive possession and control of Mapes and not open to or available to members of the general public; Mapes did not provide night supervision of the camp nor did it control or supervise the activities of the braceros during non-working hours; Mapes had for many years prior to 1960 performed the same farming operations, maintained the said labor camp, and employed braceros as described above; the pickup trucks above referred to were provided for the use of certain foremen employed by Mapes in the conduct of its farming operations; none of its foremen were braceros; none

of the pickup trucks were regularly assigned to a particular foreman but all were used by any foreman as convenience dictated; some of these trucks were regularly parked in the labor camp at night and some were driven home by foremen; it was Mapes' practice to leave the keys in the ignition of all trucks at all times; none of the braceros were ever given permission to drive any of said trucks or any other vehicles owned by Mapes; braceros as a class are unfamiliar with motor vehicles, are unable or read or write either English or Spanish, are unfamiliar with California traffic conditions, laws and customs, and are incompetent to drive motor vehicles in a safe and prudent manner upon public highways in California, all of which was well known to Mapes; braceros as a class are no more inclined to the theft or unauthorized taking of vehicles than any other large group of people. [Mapes had not experienced any such theft or taking prior to that involved herein.]

The findings as to the happening of the accident are as follows: on Thursday, August 18, 1960, at the conclusion of the day's work, one of Mapes' foremen, in accordance with his usual practice, parked one of the pickup trucks at the labor camp with the keys in the ignition; about 4 o'clock the next morning, a bracero employed by Mapes and housed at said labor camp took said pickup truck for purposes entirely personal to himself, without the permission, consent or knowledge of Mapes, or any of its foremen or other supervisory personnel, and drove said truck from the labor camp out onto the state highway; about one hour later, as the proximate result of the negligent driving of said bracero, the truck collided with the automobile in which plaintiffs were riding.

The final paragraph of the findings (XV) includes conclusionary matters but appellants make no objection as to form. This paragraph is as follows: "Mapes violated no duty to Plaintiffs by leaving its vehicles unattended, with the keys in the ignition, parked in the labor camp inhabited by BRACEROS in Mapes' employ, because it could not reasonably be required to foresee the unauthorized taking of one of said vehicles by a BRACERO, nor was it negligent in any other respect."

From the foregoing findings the trial court reached the following conclusion of law: "Defendant Mapes was not guilty of negligence toward Plaintiffs or either of them and is entitled to Judgment against Plaintiffs for its costs of suit."

The first California case dealing with the key in the ignition problem, *Richards* v. *Stanley* (1954) 43 Cal.2d 60 [271 P.2d

23], held that the complaint therein did not state a cause of action.

In substance this complaint alleged that defendants parked their auto on a public street in San Francisco, leaving it unattended and with the key in the ignition lock; that one Rawlings was thereby induced to steal said auto and drive it from its parking place in a negligent manner to the point of impact with plaintiff's vehicle.

However, *Richards* makes reference to "special circumstances" and "special relationship between the parties" and indicates that the general rule of nonliability is subject to these exceptions.

One year after *Richards,* Chief Justice (then Associate Justice) Traynor gave recognition to the "special circumstances" exception. (*Richardson* v. *Ham* (1955) 44 Cal.2d 772 [285 P.2d 269].) He epitomized the holding in *Richards* as follows: "... *in the absence of special circumstances,* the duty of an owner of an automobile to exercise reasonable care in the management thereof does not include a duty to remove the ignition key to protect persons on the highway from the negligent driving of a thief." (Italics ours.)

The facts as stated in the *Richardson* opinion are summarized as follows: at the close of work on Saturday, defendants left unattended and unlocked a 26-ton bulldozer on a mesa; the next evening three young inebriates (aged 17, 18 and 20) started driving the bulldozer around; it got out of control and traveled for a distance of one mile, leaving destruction and injury in its path.

Plaintiffs brought suit for damages, charging that defendants were negligent in leaving the bulldozer unattended and unlocked. Jury verdicts were returned in favor of defendants. The trial court ordered a new trial on the grounds of insufficiency of the evidence and misconduct of the jury. On appeal by defendants, the order was affirmed on the first ground and the second ground was not ruled upon.

The court pointed out that it was required to view the evidence in the light most favorable to plaintiffs and that the order appealed from could not be reversed unless, *as a matter of law,* there was insufficient evidence to support verdicts contrary to those returned by the jury.

In support of its decision, the court stated: "Automobiles do not arouse curiosity, and ordinarily the only appreciable risk that they will be set in motion if they are left unattended

arises from the possibility of their being stolen. The record in the present case, on the other hand, shows that defendants' bulldozers aroused curiosity and attracted spectators, while they were in operation as well as while they were parked for the night. Moreover, curious persons had been known to climb on them, and it could reasonably be inferred that they were attractive to children when left unattended at the end of the working day. The evidence is therefore *sufficient to justify the conclusion* that there was a reasonably foreseeable risk that defendants' bulldozers might be tampered with when left unattended." (Italics ours.)

In *Murray* v. *Wright,* 166 Cal.App.2d 589 [333 P.2d 111], the lower court sustained a general demurrer to the complaint without leave to amend. In reversing this ruling and allowing plaintiffs to amend if they so desired, the appellate court called attention to the familiar rule that "unless it is palpably clear that a pleading is not susceptible of amendment so as to state a cause of action, a demurrer thereto should not be sustained without leave to amend." (P. 591.)

Continuing, the court stated: "Here it is alleged that defendants purposely left the keys in the ignitions of all vehicles parked on their [used car] lot which was at all times open and unattended, in order to encourage the general public to enter the lot, examine and operate the vehicles, and that they did so 'without regard for the fitness or competence of said general public so to do.' It is further alleged that this practice was a matter of common knowledge of the public in the vicinity of the lot, and of course the pertinent details regarding the area where the lot was located was something which could be developed further by plaintiffs at the time of trial." (P. 592.)

The most recent ignition key case is *Hergenrether* v. *East* (1964) 61 Cal.2d 440 [39 Cal.Rptr. 4, 393 P.2d 164]. The facts therein may be summarized as follows: seeking overnight lodging, East left his employer's 2-ton truck, with the key in the ignition and the doors unlocked, on a city street located in the heart of Redding's "skid row"; a drunk appropriated the truck and negligently caused it to collide with a vehicle in which plaintiffs were riding.

The trial judge in *Hergenrether* granted defendants' motion for judgment notwithstanding verdicts in favor of plaintiffs and plaintiffs appealed. The Supreme Court stated that its problem was to determine whether, viewing the evidence in the light most favorable to plaintiffs, there was any substantial evidence to support the verdicts in their favor. (Citing

*McFarland* v. *Voorheis-Trindle Co.*, 52 Cal.2d 698, 703 [343 P.2d 923].)

In holding that there was such evidence, the court stated: ''When so viewed the significant circumstances disclosed are: (1) the vehicle was left in a neighborhood which was frequented by persons who had little respect for the law and the rights of others; (2) the neighborhood was heavily populated by drunks and near drunks[1]; (3) the vehicle was intended to be left there for a relatively long period of time—from midafternoon to the following morning—and, of particular importance, it was intended that it would be left for the entire night; and (4) the vehicle was a partially loaded 2-ton truck, the safe and proper operation of which was not a matter of common experience, and which was capable of inflicting more serious injury and damage than an ordinary vehicle when not properly controlled.'' (P. 445.)

The Supreme Court pointed out that, in considering the effect of the so-called special circumstances exception, ''each case must be considered on its own facts to determine whether the joint effect of them in toto justifies the conclusion that the foreseeable risk of harm imposed is unreasonable, and that the defendant owner or one in charge of a vehicle has a duty to third persons in the class of the plaintiffs to refrain from subjecting them to such risk.''

As illustrative of this principle, the court stated: ''The important factor emphasized in *Richardson* was the enormous potentiality of harm once a bulldozer is put in motion, and in *Murray* the facility with which a wrongdoer could appropriate an automobile as constituting a virtual invitation to theft.'' (P. 444.)

*Grafton* v. *Mollica* (1965) 231 Cal.App.2d 860 [42 Cal. Rptr. 306], is a recent case involving the ''special relationship between the parties'' exception. There the plaintiff-service station attendant was crushed against a wall by defendant's auto when it suddenly lurched forward while he was servicing it. It was probably caused to do so by some action of defendant's nephew, who had been left in the car by defendant.

The trial court directed a verdict in favor of defendant. In reversing this ruling, the appellate court said: ''It is hornbook law that ordinarily, in the absence of a special relation-

---

[1]The court emphasized that ''the character of the neighborhood wherein East parked the vehicle and left it exposed to theft is critical to a proper resolution of the issues which are presented.'' (P. 442.)

ship between the parties, there is no duty to control the conduct of a third person so as to prevent him from causing harm to another. . . ."

However, the court stated that the issue of defendant's negligence should have been submitted to the jury. Its reasoning is stated as follows: "The potentiality of harm created when a 27-month old active boy is left alone in the front seat of a car with the engine running, and when respondent knows that appellant is required to go to the front of the car, is clearly so great as to impose a duty of care, the breach of which borders on negligence as a matter of law. At the very least *it created a question of fact for the jury.*" (P. 863; italics ours.)

It is significant that in none of the foregoing cases did the appellate court hold that actionable negligence had been established *as a matter of law.* In every instance in which the plaintiff prevailed on appeal, the appellate court determined only that, under the circumstances involved therein, the issue was one of fact and not law.

In the instant case appellants encountered no difficulty in obtaining a trial on the merits. The facts as set forth in the findings are supported by substantial evidence and appellants do not contend to the contrary. Their position is that these facts establish respondent's liability as a matter of law. They ask us to so find and thus reverse the trial court under the principle that negligence becomes a question of law if reasonable minds can draw but one conclusion from facts which are not in dispute.

■ However, if there are different inferences which may reasonably be drawn from such uncontradicted facts, an appellate court must regard such inferences in the light most favorable to the support of the judgment. (3 Witkin, Cal. Procedure (1954) Appeal, § 88, p. 2251.)

■ Viewing the findings of fact in this light, we cannot say as a matter of law that respondent was guilty of actionable negligence toward appellants. We have set forth these findings in detail and they need not be again reviewed.

Appellants' final contention is that the trial court "misunderstood the doctrine of unreasonable risk" and "erroneously reasoned" that "a duty of care [by Mapes] would *only* arise if the braceros were *more prone* to an 'unauthorized taking' than other groups of people." (Italics added.) Appellants charge that the trial court "used as the sole criterion the mathematical probability of an unauthorized taking." The

background relevant to this contention will demonstrate that it is without merit.

Appellants made the following allegations in their complaint: "that said Mexican laborers were irresponsible and on many occasions excessively drank intoxicating liquors at said labor quarters, and said defendants knew, or in the exercise of ordinary care should have known and anticipated, that if a motor vehicle were available for use by said Mexican laborers one or more of them might take the same and operate it upon the public highways. . . ."

As we have seen, the case was tried upon the theory of "foreseeability," pursuant to the pretrial order. *One* of the factors to be considered was the character of the persons in the area of the theft. This was one of the factors held to be important in *Hergenrether*, which stated the first of the "significant circumstances" listed therein as follows: "the vehicle was left in a neighborhood which was frequented by persons who had little respect for the law and the rights of others." (61 Cal.2d, at p. 445.)

■ In direct response to the allegations of appellants' complaint, quoted above, the trial court made the following finding of fact: "Braceros as a class are no more inclined to theft or unauthorized taking of vehicles than any other large group of people."

Thus, one of the "significant circumstances" herein is that, to paraphrase *Hergenrether*, "the vehicle was left at a private camp inhabited by persons who were no more [or less] inclined to theft or unauthorized taking," etc.

Appellants, however, merge the above quoted finding into the concluding finding made, which we again quote as follows: "Mapes violated no duty to Plaintiffs by leaving its vehicles unattended, with the keys in the ignition, parked in the labor camp inhabited by braceros in Mapes' employ, *because* it could not reasonably be required to foresee the unauthorized taking of one of said vehicles by a bracero, nor was it negligent in any other respect" ("because" is emphasized by appellants).

Appellants interpret the above language to mean that the trial court's *sole* reason for its finding that Mapes was not negligent is that Mapes could not reasonably be required to foresee the unauthorized taking *because* (and only because) "Braceros as a class are no more inclined to theft or unauthorized taking of vehicles than any other large group of people."

The concluding finding is not so limited either by wording or intent. It is based upon all of the circumstances relating to the issue of "foreseeability," including *but not limited to* the alleged propensities of braceros. The extensive findings of fact, which we fully summarized at the outset, detail all of the circumstances relating to "special circumstances" and "special relationship." It is evident that all of these circumstances were considered by the trial court in arriving at its decision.

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 12, 1966.