[Civ. No. 55522. Second Dist., Div. One. Oct. 26, 1979.]

**MARY HOSKING, Plaintiff and Appellant, v.
SAN PEDRO MARINE, INC., Defendant and Respondent.**

COUNSEL

Olney, Levy & Kaplan and Denton L. Anderson for Plaintiff and Appellant.

Hitt & Murray and Richard E. Conway for Defendant and Respondent.

OPINION

**ROTHMAN, J.**\*—In this action a woman injured in a motor vehicle collision (Hosking) sued the driver of the stolen truck which collided with her vehicle during a police chase, and the company that owned the truck (San Pedro Marine, Inc.). The thief is not involved in this appeal.

By agreement of the parties the legal issues presented in the case were submitted to the trial judge for ruling on a defense motion for nonsuit based on the facts set forth in plaintiff's opening statement. The trial judge granted the motion for nonsuit, and judgment was entered for defendant San Pedro Marine, Inc. Plaintiff has appealed.

San Pedro Marine, Inc., owned a 1973 GMC pickup truck, which its manager ordinarily drove. On the night of November 21, 1973, the manager drove the truck to his mother-in-law's residence, left the truck unattended in an alley nearby with the lights on, the door open, the key in the ignition, and the engine running. The area was a half block from San Pedro High School. When the manager returned about two minutes later, he found the truck had been taken without his consent.

On November 23, 1973, the police saw the truck in the San Pedro area being driven by Robles, a chase ensued. Robles ran a stop sign and collided with Ms. Hosking's automobile, causing her injury.

Plaintiff submitted an offer of proof as to the testimony by an ex-police officer (Hurley). It contained these statements, among others: that auto theft rates in 1975 were higher in Los Angeles than the rest of California; that the San Pedro area was the same in this respect as the rest of Los Angeles; that the area of the theft was one block from

---

\*Assigned by the Chairperson of the Judicial Council.

San Pedro High School; that the vehicle taken (a 1973 GMC pickup) was popular with juvenile auto thieves; that a vehicle is more likely to be stolen at night; that in 1975 there was a great likelihood of a stolen vehicle being involved in a chase; and that the rate of accidents in stolen vehicles was higher than other vehicles.[1]

The trial judge found that there had been no violation of statute, and that no "special circumstances" existed to take this case out of the general rule of no liability in key-in-the-ignition cases established in *Richards* v. *Stanley*, 43 Cal.2d 60 [271 P.2d 23]. The court found that there was no violation of a duty owed plaintiff by defendants, and thus found no basis to submit the cause to a jury on the submitted facts.

Plaintiff asserts in this appeal that: (1) there was a duty that was breached in terms of a violation of statute, Vehicle Code section 22515; and (2) there were, in any event, "special circumstances" that exempted this case from the general California rule of no liability in key-in-the-ignition cases.

I

Plaintiff contends that defendant, San Pedro Marine, Inc., was liable as a consequence of the rule in Evidence Code section 669, which provides that failure of due care is presumed if a person: 1. "Violated a statute"; 2. "The violation proximately caused death or injury to person or property"; 3. "The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent"; and 4. The injured person was in "the class of persons for whose protection the statute...was adopted."

Plaintiff points to Vehicle Code section 22515 as a statute which presumptively established negligence in this case. It provides: "No person driving, or in control of, or in charge of, a motor vehicle shall permit it to stand on any highway unattended without first effectively setting the brake thereon and stopping the motor thereof."

---

[1]The parties agreed in oral argument that the trial judge did not consider the Hurley offer of proof. However, plaintiff's opening statement contained two references to Hurley's proffered evidence: (1) that the type of vehicle is one of the most popular among young automobile thieves; and (2) that because of the type of vehicle, the location where it was left and the time of evening, the chances of the truck being stolen were great.

Defendant's manager violated section 22515. The problem for plaintiff is that this particular violation did not proximately cause Ms. Hosking's injury, was not the kind of harm that the statute was designed to prevent, and she was not in the class of persons for whose protection this law was enacted. The harm which Vehicle Code section 22515 is designed to prevent is that resulting from runaway vehicles, and not the harm resulting from thefts. (See *Martinovic* v. *Ferry*, 222 Cal.App.2d 30 [34 Cal.Rptr. 692]; *Prince* v. *McDonald*, 7 Cal.App.2d 77 [45P.2d 425]; *Keller* v. *Pacific Tel. & Tel. Co.*, 2 Cal.App.2d 513 [38 P.2d 182].) No California case has construed this section to apply to an injury caused by automobile theft. Plaintiff here was not the victim of a runaway vehicle, but of an irresponsible automobile thief seeking to avoid capture by the authorities.

## II

■ In California the owner of a motor vehicle is under no duty to a person injured by a thief's operation of a stolen vehicle absent "special circumstances" affecting the foreseeability of the theft and the thief's negligent operation of the vehicle. (*Richards* v. *Stanley*, 43 Cal. 2d. 60 [271 P.2d 23]; *Hergenrether* v. *East*, 61 Cal.2d 440 [39 Cal.Rptr. 4, 393 P.2d 164].)

The issue in this appeal is whether the facts of this case justify "a conclusion that the foreseeable risk of harm imposed is unreasonable, and that defendant owner or one in charge of a vehicle has a duty to third persons in the class of the plaintiffs to refrain from subjecting them to such risk." The argument of plaintiff centers on an attempt to demonstrate that the "special circumstances" here bring this case within the exception to *Richards*.

The "special circumstances" exception mentioned in *Richards* (43 Cal.2d 60, 65 [271 P.2d 23]) was particularly explained in *Hergenrether* v. *East*, 61 Cal.2d 440, 444 [39 Cal.Rptr. 4, 393 P.2d 164], in this way: "However, *Richards* would not bar the door to recovery in all cases. Special circumstances which impose a greater potentiality of foreseeable risk or more serious injury, or require a lesser burden of preventative action, may be deemed to impose an unreasonable risk on, and a legal duty to, third persons...."

California courts have found "special circumstances" in these cases: *Richardson* v. *Ham*, 44 Cal.2d 772 [285 P.2d 269] (unattended and un-

locked 26-ton bulldozer); *Murray* v. *Wright,* 166 Cal.App.2d 589 [333 P.2d 111] (car dealer commonly left keys in cars on the lot); *Hergenrether* v. *East,* 61 Cal.2d 440 [39 Cal.Rptr.4, 393 P.2d 164] (partly loaded 2-ton truck in area where persons disrespect law and populated by drunks, defendant intended to leave it for a long period of time); and *Enders* v. *Apcoa, Inc.,* 55 Cal.App.3d 897 [127 Cal.Rptr. 751] (known that parking lot attendant left keys in cars in lot and there were past thefts).[2] California courts have not found "special circumstances" in these cases: *England* v. *Mapes Produce Co.,* (1965) 238 Cal.App. 2d 120 [47 Cal.Rptr. 506] (where the farm camp operator always left keys in ignition of trucks in unattended lot around Mexican laborers who were not good drivers); *Holder* v. *Reber,* 146 Cal.App.2d 557 [304 P.2d 204] (where appellant frankly admitted no "special circumstances"); and *Brooker* v. *El Encino Co.,* 216 Cal.App.2d 598 [31 Cal.Rptr. 24] (leaving keys in car in unattended lots).[3]

"...[T]he power of the court to direct a verdict is absolutely the same as the power of the court to grant a nonsuit. A nonsuit or a directed verdict may be granted 'only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff, if such a verdict were given.' ... In other words, the function of the trial court on a motion for a directed verdict is analogous to and

[2] Some examples of cases outside California where courts have imposed liability in special circumstances: auto dealers regularly leaving keys in car in locality frequented by juveniles with high incidence of vehicle theft (*Kacena* v. *George W. Bowers Company* 63 Ill.App.2d 27 [211 N.E.2d 563]); keys in ignition of auto dealers car in area frequented by minors and intoxicated persons (*Mezyk* v. *National Repossessions Inc.* 241 Ore. 333 [405 P.2d 840]); car left unattended on used car lot frequented by children (*Anderson* v. *Bushong Pontiac Company, Inc.* 404 Pa.382 [171 A.2d 771]); unattended during nighttime (*Mellish* v. *Cooney* 23 Conn. Supp. 350 [183 A.2d 753]); driver delivering goods to restaurant left keys in car on parking lot next to restaurant. (*Schaff* v. *R. W. Claxton, Inc.* 144 F.2d 532 [79 App.D.C. 207].)

[3] Some examples of cases outside California where courts have refused to impose liability in these circumstances: vehicle stolen by children from junior high parking lot (*Childers* v. *Franklin* 146 Ill.App.2d 344 [197 N.E.2d 148]); airport area frequented by juveniles and vehicle vandalism problem (*Canavin* v. *Wilmington Transportation Company* 208 Pa.Super.506 [223 A.2d 902]); car left with keys on grounds of mental hospital (*Clements* v. *Tashjoin* 168 R.I. 472 [168 A.2d 472]); auto dealer regularly left keys in ignition on lot (*Kalberg* v. *Anderson Bros. Motor Co.* 251 Minn. 458 [88 N.W.2d 197]); cab driver left motor running while he ate in diner, took eyes off cab (*Curtis* v. *Jacobson* 142 Me. 351 [54 A.2d 520]); see also *Castay* v. *Katz & Bestholl* (La. 1933) 148 So. 76).

practically the same as that of a reviewing court in determining on appeal, whether there is evidence in the record of sufficient substance to support a verdict." (*Estate of Lances,* 216 Cal. 397, 400-401 [14 P.2d 768], and see *Dailey* v. *Los Angeles Unified Sch. Dist.,* 2 Cal.3d 741, 745 [87 Cal.Rptr. 376, 470 P.2d 360].)

In the instant case, viewing the evidence in a light most favorable to plaintiff, there were no "special circumstances" creating a greater potential of foreseeable harm than would exist in any case where a driver leaves keys in a car. Here the truck was left at night in an alley with the door open, lights on, motor running, and, of course, the keys in the ignition, while the defendant's agent went into his mother's apartment for a few minutes. The statistical data about car thefts in Los Angeles and San Pedro goes to the viability of the *Richards* rule itself and not to the foreseeability in the instant case, (*Enders* v. *Apcoa, supra,* p. 899.) The fact that the events took place near a high school would not amount to a "special circumstance." If we reached such a conclusion, any metropolitan area in California would be in the "special circumstance" category. The potential of foreseeable juvenile crime was not increased by the manager's conduct here. In *Enders* there was a significant history of thefts from Apcoa's parking lots, including the particular parking lot in question. In addition, it was known that Apcoa regularly left their lots sparsely attended with keys in the cars. In *Hegenrether* the truck was left for a long period of time loaded with merchandise in an area well-known for its lawlessness. Plaintiff contends that leaving the lights on, door open and engine running significantly increased the risk of foreseeable harm. We do not agree. Although these circumstances could conceivably be attractive to a thief, they do not increase the foreseeable risk. The events took place in an alley way under circumstances where the driver expected to return immediately. Under these circumstances (the door open, lights on and motor running) what was reasonably foreseeable was that the driver would return momentarily. There is no more than a slight difference between simply leaving keys in an ignition, and the circumstances here, too slight to warrant acceptance as a "special circumstance." Finding "special circumstances" here would be tantamount to an indirect elimination of the rule in *Richards* v. *Stanley, supra.*[4]

---

[4]After our review of the law in this area, we must affirm the judgment under the rule of law set out in Justice Traynor's 1954 decision in *Richards* v. *Stanley,* 43 Cal.2d 60 [271 P.2d 23]. However, we feel obliged to make known our views on *Richards.*
*Enders* v. *Apcoa, Inc.* 55 Cal.App.3d 897, 905 [127 Cal.Rptr. 751], suggests that

The judgment is affirmed.

Lillie, Acting P. J., concurred.

**HANSON, J.**—I concur in the judgment.

I have no quarrel with the main body of the well reasoned majority opinion. However, I do not concur with footnote 4 insofar as it suggests that the State Supreme Court should reexamine its holding in *Richards v. Stanley* (1954) 43 Cal.2d 60 [271 P.2d 23], and the "special circumstances" exception in light of the "empirical data" showing an epidemic of car thefts. I construe footnote 4 to thus imply that by reason of the "empirical data" referred to that the time has come to expand the basis for establishing civil liability of car owners whose cars are stolen within the factual context of the case at bench. I disagree. While the instant case focuses on a somewhat narrow issue in the field of tort liability, i.e., foreseeability of the risk of harm to third persons, broader legal and public policy considerations as hereafter discussed lead me to an opposite conclusion.

At the outset I note that traditionally whether or not a "Duty" is owed from one person to another (one of the necessary elements to es-

---

statistical data in the area of the automobile theft problem should, more properly, be addressed to the validity of the *Richards* rule. The data suggests that it is foreseeable to a reasonably prudent driver that if the keys are left in the ignition of an unattended vehicle, the risk of harm to innocent third persons from the reckless driving of a car thief is substantially increased.

The empirical data, briefly, is as follows: The crime of automobile theft has reached epidemic status in California, and particularly Los Angeles. F.B.I. figures for 1976 indicated that there were 880 auto thefts per 100,000 population in Los Angeles, whereas the national average was 446.1, and California's average was 644.3 per 100,000 population. (F.B.I., Crime in the United States (1975) pp. 37, 44, 63.) The data for 1977 show 909.4 thefts per 100,000 in population in Los Angeles County. (F.B.I., Crime in the United States (1977) p. 63.) In 1976 and 1977, California ranked fifth in the nation behind Massachusetts, Alaska, New York and Rhode Island. (F.B.I., Crime in the United States (1977) pp. 38-43.) Further, Los Angeles County ranked as the tenth worst metropolitan area in the nation in 1976 (F.B.I., Crime in the United States (1976) pp. 54-73), and as the sixth worst area in 1977 (F.B.I., Crime in the United States (1977) pp. 54-73).

The available data also directly relates theft to the keys being left in automobiles, to the offender's youth, and to danger to the public. A study on vehicle thefts published by the California Highway Patrol in June of 1976, indicated that in 47 percent of the vehicle thefts studied, a key was left in the vehicle. The study further found that at time of recovery the vehicle was wrecked in 15.1 percent of the cases, and that the major event leading to arrest was a nonaccident traffic violation in 37 percent of the

tablish civil liability for an unintentional tort) is primarily a question of law to be determined by the court and not a question for the trier of fact.

I further note that the *Richards* court must have been aware of that portion of Civil Code section 1714 (hereinafter § 1714) quoted in footnote 4 of the majority opinion since that code section was enacted in 1872. Moreover, the *Richards* opinion refers to the case of *Ney v. Yellow Cab Co.* (1954) 2 Ill.2d 74 [117 N.E.2d 74, 51 A.L.R.2d 624], in which the State Supreme Court of Illinois addressed the problem of automobile thefts and the increase in juvenile delinquency and construed an Illinois state statute as one intended for the benefit of persons who might be injured by the operation of stolen cars. However, the lead opinion in *Richards* refused, in the absence of such a California statute, to impose such a duty on the part of California car owners.

In my view any judicially decreed expansion of civil liability of car owners beyond the perimeters of the "special circumstances" exception discussed in the majority opinion would constitute an improper invasion

---

cases, and a traffic accident in 6 percent. Finally, they found that 59 percent of the offenders were 19 years old or less. (Special Vehicle Theft Survey, Cal. Highway Patrol (June 1976) pp. 7-11.)

The good citizen who defies all the modern gadgets designed to thwart automobile thefts by leaving keys in the ignition, places into the hands of the most irresponsible sort of person—the car thief—a vehicle capable of inflicting death, serious injury or property damage to others.

In *Zinck* v. *Whelan* 120 N.J. Super. 432 [294 A.2d 727, 736], the court cited data consistent with the above, and reversed the long standing rule in New Jersey of no liability in key-in-the-ignition cases. The court said that a "reasonably prudent motor car operator can today justly be held to an awareness of the gravamen of the foregoing data, if not of the specific figures ...." (See Annot. 45 A.L.R.3d 787.)

Civil Code section 1714 establishes the rule of tort liability: "(a) Everyone is responsible, not only for the result of his willful acts, but also for any injury occasioned to another by his want of ordinary care or skill in the management of his property or person,...."

In *Rowland* v. *Christian*, 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], the Supreme Court, citing the above section, held that "A departure from this fundamental principle involves the balancing of a number of considerations; the major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, costs, and prevalence of insurance for the risk involved. [Citations.]" (At pp. 112-113.)

Applying these standards, we believe a departure from the rule of Civil Code section 1714 is no longer warranted in a key-in-the-ignition case

of the legislative function,[1] which the *Richards* court specifically refused to do.

Car thieves break into locked cars and "hot wire" them in seconds. There is no question under those circumstances that no liability can attach to the owner of a stolen car for damages suffered by third parties while the stolen car is being driven by the thief. Yet it is suggested that liability may attach to a stolen car owner merely because he or she left the keys in the car which does violence to the principle that one may assume that others will obey the law. *Query:* If a housewife forgot to lock the door of her house when she went shopping and a thief entered and stole her husband's gun, should she be held civilly liable to a third party who may be robbed and shot by the burglar who stole the gun in the first instance?

I paraphrase and concur in what Justice Schauer said in his concurring opinion in *Richards:* "A [car owner is] not bound to anticipate that any person would steal [his or] her car or commit any other crime in respect to it, and, accordingly, [a car owner] owe[s] no duty to anyone growing out of the unlawful taking and operation of the vehicle." (*Richards* v. *Stanley, supra,* 43 Cal.2d 60, 69.)

It is certainly neither wise nor advisable for car owners to leave their keys in unattended cars. However, by subjecting car owners who do so to possible civil liability to third parties for damages caused while their cars are being operated by thieves smacks of accepting car thievery as a fact of life which an orderly society cannot accept. Thus, in the abstract, by subjecting car owners to such liability may in the long run adversely affect the public policy of insisting that the various branches of government and those governmental agencies charged with law enforcement properly perform their functions which includes bringing the car theft problem under control. The passing of the buck, as it were, to the long-suffering, tax-paying, insurance premium-paying, law abiding citizens, may provide a means for government officials to sidestep ac-

---

[1] I note that in 1978 the state Legislature amended section 1714 (referred to in fn. 4 of the majority opinion) to specifically abrogate the state Supreme Court's holdings in *Vesely* v. *Sager* (1971) 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151]; *Bernhard* v. *Harrah's Club* (1976) 16 Cal.3d 313 [128 Cal.Rptr. 215, 546 P.2d 719]; and *Coulter* v. *Superior Court* (1978) 21 Cal.3d 144 [145 Cal.Rptr. 534, 577 P.2d 669], which had by judicial decree expanded the circle of civil liability to those furnishing alcoholic beverages to an intoxicated person.

countability for failure to suppress the car theft epidemic, and would also tend to dampen efforts to energetically and realistically come to grips with the problem.[2]

[2]One of the primary duties and functions of our various levels of government is to provide security for the persons and property of its citizens from criminal activity. California citizens are entitled to expect no less. That is what citizens have bought and paid for·with their tax dollars.

In the not too distant past citizens were not afraid to go out at night and leave front doors open and unlocked because the law was enforced and their safety protected. Criminals who were apprehended were vigorously prosecuted and if convicted the punishment meted out told the law breaker and would-be criminals that the risk of getting caught wasn't worth it.

But times have changed—housewives are mugged and kidnaped in broad daylight from supermarket parking lots and robberies, burglaries, rapes and car thefts continue to increase. In my opinion, one of the major contributing causes for this breakdown of respect for the law and rights of others is that social engineers and psychiatrists, good intentioned but short on common sense, have sold to legislators and judges a bill of goods by way of untested theory that society itself was really the culprit and rehabilitation, not punishment, of the convicted criminal was all that was needed.

The grand experiment hasn't worked in the real world and it and other factors have combined to bring on the soaring crime rates. Due to rampant criminal activity, more and more citizens who already pay exorbitant taxes to the government for their protection are compelled to expend additional hard earned dollars in order to provide for their personal safety and have had to turn their private homes into fortresses by installing burglar alarms and steel bars on their doors and windows and hiring private security guards.

To subject California citizens, *who are themselves victims of car thieves,* to the added outrage of being haled into court as defendants in civil suits and possibly being held liable for damages caused by the acts of thieves who steal their cars is not only at odds with traditional concepts establishing and imputing civil liability but would constitute a colossal cop-out by those in government charged with the responsibility of maintaining law and order. It would also be graphic evidence adding credence to those who assert that our criminal justice system is in a state of bankruptcy and in need of a major overhaul.