[Civ. No. 45997. First Dist., Div. One. Dec. 17, 1980.]

DONALD KIICK, Plaintiff and Appellant, v.
LUCY LEVIAS et al., Defendants and Respondents.

COUNSEL

Charles O. Morgan, Jr., for Plaintiff and Appellant.

Crosby, Heafy, Roach & May, Peter W. Davis, James C. Martin, Castleman, Haskell & Kahn and William W. Haskell for Defendants and Respondents.

OPINION

**GRODIN, J.**—This is an appeal from a summary judgment in favor of certain defendants in a personal injury action. Appellant, by his complaint, sought recovery for damages which he suffered when his automobile collided with an automobile owned by respondent K & C Automotive. On the day of the accident the offending vehicle had been loaned out by K & C to respondent Levias as a convenience to her while her car was being repaired by K & C. Levias, on the day of the accident, left the vehicle parked in front of her house in Oakland, and during the day it was stolen. At the time of the accident it was, presumably, being driven by the thief. The car had not been "hot-wired," so the thief must have had a key. Levias remembers opening the car to re-

move some of her personal belongings before she went to work, and acknowledges that she may have left the keys in the car or dropped them nearby. The incidence of car thefts in Levias' neighborhood is less than the city-wide average for Oakland, and among 35 areas designated as police beats within the city, 26 had a higher incidence of auto theft.[1] ■ The question is whether, on these facts, reflected in pleadings and depositions, the trial court erred in granting summary judgment in favor of K & C[2] and Levias as a matter of law.

Appellant acknowledges that *Richards* v. *Stanley* (1954) 43 Cal.2d 60 [271 P.2d 23], constitutes a formidable obstacle to his theory of recovery against respondents. Plaintiff in that case similarly alleged injuries as a result of a collision with a car stolen from the Stanleys and driven by the thief, and alleged that Mrs. Stanley had left the key in the ignition lock of her unattended vehicle. Conceding that such conduct constituted negligence on the part of Mrs. Stanley "toward her own and her husband's proprietary interests in the automobile," the issue as the court defined it was "the scope of the *duty* of the owner of an automobile to control his property for the protection of persons on the public streets." (*Id.*, at p. 63, italics added.) In that connection, the court reasoned: "The problem is not answered by pointing out that there is a foreseeable risk of negligent driving on the part of thieves. There is a foreseeable risk of negligent driving whenever anyone drives himself or lends his car to another. That risk has not been considered so unreasonable, however, that an owner is negligent merely because he drives himself, or lends his car to another, in the absence of knowledge on his part of his own or the other's incompetence. Moreover, by leaving the key in the car the owner does not assure that it will be driven, as he does when he lends it to another. At most he creates a risk that it will be stolen and driven. The risk that it will be negligently driven is thus materially less than in the case in which the owner entrusts his car to another for the very purpose of the latter's use." (*Id.*, at p. 65.)

---

[1] James Speer, a crime analyst for the Oakland Police Department, testified in deposition as follows: Oakland is divided, for law enforcement purposes, into five districts, each of which is approximately the same in geographical size, and each district is in turn divided into seven beats. Levias' residence is located in district 5 on beat 30. There were 68 auto thefts in beat 30 in the year 1977, approximately 20 below the city-wide average per beat. District 5 had the lowest rate of auto thefts of any district in Oakland. The incidence of auto theft is a function of population density, and is a greater problem in a city than in a rural setting.

[2] K & C's liability in this case, if any, is based upon the imputed negligence of Levias under Vehicle Code section 17150.

In the *Richards* court's opinion, "recognition of a duty on the part of car owners to protect the public from the risk of the motoring activities of thieves [would not be justified] when to do so would result in imposing greater liability than is now provided by statute when the owner voluntarily entrusts his car to another. (See Veh. Code, § 402.)" (43 Cal.2d at p. 65.) Accordingly, the court affirmed judgment of nonsuit in favor of the Stanleys.

*Richards* noted that "Mrs. Stanley did not leave her car in front of a school where she might reasonably expect irresponsible children to tamper with it [citation], nor did she leave it in charge of an intoxicated passenger" (43 Cal.2d at p. 66), and in subsequent cases the courts have found liability to exist on the basis of "[s]pecial circumstances which impose a greater potentiality of foreseeable risk or more serious injury, or require a lesser burden of preventative action." (*Hergenrether v. East* (1964) 61 Cal.2d 440, 444 [39 Cal.Rptr. 4, 393 P.2d 164] [involving partly loaded 2-ton truck left in "skid-row" area populated by drunks]; see also *Richardson v. Ham* (1955) 44 Cal.2d 772 [285 P.2d 269] [unattended and unlocked 26-ton bulldozer]; *Enders v. Apcoa, Inc.* (1976) 55 Cal.App.3d 897 [127 Cal.Rptr. 751] [known that parking lot attendant left keys in cars in lot, and there were past thefts]; *Murray v. Wright* (1958) 166 Cal.App.2d 589 [333 P.2d 111] [car dealer commonly left keys in cars on the lot].) No such special circumstance appears in this case, however. While it is undoubtedly true, as appellant asserts, that there has been a *general* increase in car thefts in metropolitan areas since *Richards*, and while as a consequence the probability that a car left unattended and with keys accessible will be stolen may well be greater now than it was in 1954, these are not "special" circumstances (*Hosking v. Robles* (1979) 98 Cal.App.3d 98, 104 [159 Cal.Rptr. 369]), and appellant asserts no facts which otherwise distinguish Levias' situation from that of Mrs. Stanley.

Appellant contends that the following principles of California tort law developed since *Richards* have substantially eroded the underpinnings of that holding. In *Dillon v. Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316], Justice Tobriner, in a scholarly opinion for the court, observed that denial of liability for lack of "duty" was a fairly recent legal device "designed to curtail the feared propensities of juries toward liberal awards" (68 Cal.2d at p. 734); that such reasoning "'begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct'" (*ibid.*); and that "the chief element in determining whether defendant

owes a duty or an obligation to plaintiff is the foreseeability of the risk." (*Id.*, at p. 740.)

In *Rowland v. Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], the court expanded on this analysis to declare that "the basic policy of this state set forth by the Legislature in section 1714 of the Civil Code is that everyone is responsible for an injury caused to another by his want of ordinary care or skill in the management of his property" (*id.*, at pp. 118-119), and that "in the absence of statutory provision declaring an exception to the fundamental principle enunciated by section 1714 of the Civil Code, no such exception should be made unless clearly supported by public policy. [Citations.] [¶] A departure from this fundamental principle involves the balancing of a number of considerations; the major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Id.*, at pp. 112-113.)

In *Weirum v. RKO General, Inc.* (1975) 15 Cal.3d 40 [123 Cal.Rptr. 468, 539 P.2d 36], the court referred to the determination of duty as "primarily a question of law," expressing the "'sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection'...including the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall." (*Id.*, at p. 46.) But, "[w]hile the question whether one owes a duty to another must be decided on a case-by-case basis, every case is governed by the rule of general application that all persons are required to use ordinary care to prevent others from being injured as the result of their conduct .... [F]oreseeability of the risk is a primary consideration in establishing the element of duty," and "[w]hile duty is a question of law, foreseeability is a question of fact for the jury." (*Ibid.*)

Finally, in *Coulter v. Superior Court* (1978) 21 Cal.3d 144, 147 [145 Cal.Rptr. 534, 577 P.2d 669], the court applied these principles to hold "that a social host who furnishes alcoholic beverages to an obviously intoxicated person, under circumstances which create a reasonably

foreseeable risk of harm to others, may be held legally accountable to those third persons who are injured when that harm occurs."

Appellant argues that the degree of foreseeability of harm to third persons is no less in the case of one who leaves car keys in or near an automobile than it is in the case of one who furnishes alcoholic beverages to an intoxicated person, and that in any event (there being no countervailing statute or public policy which would justify denial of recovery) he is entitled to have that question determined by the jury.

Were we not bound by *Richards* we might well find appellant's reasoning persuasive. Insofar as the issue is one of foreseeability, it is certainly a matter of common knowledge that the risk of auto thefts in metropolitan areas has increased substantially over the years since that decision; and it is at least arguable that auto thefts are more likely to occur when keys are left in or about the car, that vehicles operated by thieves are more likely to end up in accidents, and that city dwellers should be held to knowledge of these matters.[3]

Insofar as the issue calls for an overall policy determination under the heading of duty, a weighing of relevant factors in addition to foreseeability[4] arguably inclines toward liability as well: the burden upon

---

[3]The court in *Hosking* v. *Robles, supra*, referred to FBI data showing (among other things) California to rank fifth in the nation in the incidence of auto thefts in 1976-1977. The court referred also to California Highway Patrol data indicating that of the vehicle thefts studied, keys had been left in the vehicles 47 percent of the time, the vehicles were wrecked at the time of recovery 15.1 percent of the time, the major event leading to arrest was a nonaccident traffic violation in 37 percent of the cases and a traffic accident in 6 percent, and 59 percent of the offenders were 19 years old or less. On the basis of these and other considerations the *Hosking* court opined that "a departure from the rule of Civil Code section 1714 is no longer warranted in a key-in-the-ignition case" (98 Cal.App.3d at pp. 105-106, fn. 4), but concluded that there were no "special circumstances" which would justify a departure from *Richards*. (*Id.*, at p. 104.)

The *Richards* rule continues to be the majority rule (see cases discussed at 45 A.L.R.3d 787, and Supp.) but in New Jersey the rule has been modified on the basis that risk of negligent driving by the thief is reasonably foreseeable (*Zinck* v. *Whelan* (1972) 120 N.J. Super. 432 [294 A.2d 727, 736].)

[4]While a number of cases (e.g., *Weirum* v. *RKO General, Inc., supra*, 15 Cal.3d 40, 46) characterize foreseeability as a question of fact for the jury, we note that *Rowland* v. *Christian, supra*, 69 Cal.2d 108, 112-113, lists the "foreseeability of harm to the plaintiff" as among the considerations to be balanced in determining whether there should be a departure from the "general principle that a person is liable for injuries caused by his failure to exercise reasonable care"; and we note also that in some cases the court has determined whether the accident and harm were "reasonably foreseeable" as a matter of law (*Molien* v. *Kaiser Foundation Hospital* (1980) 27 Cal.3d 916, 922

the defendant in exercising due care is slight, the imposition of liability may increase citizen diligence, and insurance against such risks by owners (assuming liability based on negligence) is presumably both available and prevalent. Thieves, by contrast, are not likely to carry applicable liability insurance, and absent liability on the part of the owner, the entire burden of the accident would fall upon the wholly innocent victim.[5]

*Richards* is binding upon us, however, not only by its own weight as authority[6] but through subsequent affirmation as well. In *Dillon* v. *Legg, supra*, the Supreme Court referred to *Richards* with approval in the following language: "[A]pplying the foreseeability test, the courts have held that the mere act of leaving a key in an automobile, although it may possibly raise a foreseeable risk that the car will be stolen, does not increase the risk of injury to other property and hence does not warrant liability: '[e]ven if she could have foreseen the theft, she had no reason to believe that the thief would be an incompetent driver.'" (68

---

[167 Cal.Rptr. 831, 616 P.2d 813]). Indeed, in *Dillon* v. *Legg, supra*, 68 Cal.2d 728, the court explains *Richards* on that basis. Perhaps the explanation lies partly in the proposition that foreseeability is a question of law for the court where reasonable people could not differ and partly, as *Rowland* suggests, in the proposition that the degree of foreseeability is necessarily a part of the overall preliminary policy determination to which the label "duty" is attached.

[5]There are, of course, countervailing considerations as well. The moral blame attached to defendant's conduct is slight by community standards, and probably less than the moral blame attached to the serving of alcoholic beverages to a person who is both obviously intoxicated and likely to be driving an automobile while in that condition. Perhaps also the foreseeability of harm is less in the former situation, and the element of intentional wrongdoing by a third party arguably constitutes an attentuating factor. (Cf. *Hosking* v. *Robles, supra*, 98 Cal.App.3d at p. 105 et seq., concurring opn.) Moreover, what Justice Traynor considered to be an anomaly in *Richards*, the comparison between liability for the negligent acts of a car thief and the limited liability (regardless of fault) which attaches when one simply loans his car to another, remains. (See Veh. Code, § 17150.)

[6]Appellant argues that this court is not bound by *Richards* because there existed no majority opinion in that case. We reject that argument on two grounds: Justice Schauer's concurring opinion manifested agreement with Justice Traynor's plurality opinion, at least as the latter was subsequently interpreted and applied in the special circumstances cases; and in any event the Supreme Court has unmistakably and without division reaffirmed *Richards'* vitality in the absence of special circumstances. (*Hergenrether* v. *East, supra*, 61 Cal.2d 440, 443-445.)

In his closing brief appellant points to the fact that *Richards* relied on Restatement of Torts section 315 (see 43 Cal.2d at p. 65), whereas in *Weirum* the court recognized that section 315 is not applicable where what is involved is misfeasance rather than nonfeasance. (15 Cal.3d at pp. 48-49.) While *Weirum* may undercut reliance on that section of the Restatement, that reliance was not an essential aspect of the *Richards* rationale.

Cal.2d at p. 742; see also *Hergenrether* v. *East, supra,* 61 Cal.2d 440, 443-445; and see discussion of *Richards* in White, Tort Law in America (1980) pp. 193-196.) Certainly there is a tension between the rationale of *Richards* and subsequent case law, but if *Richards* is to be reversed or its rationale modified to accord with subsequent doctrine, that is a task for the Supreme Court and not for us. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455-456 [20 Cal.Rptr. 321, 369 P.2d 937].)

The summary judgment in favor of defendants Lucy Levias and K & C Automotive is affirmed.

Racanelli, P. J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 11, 1981.