[No. A024343. First Dist., Div. Five. May 1, 1985.]

EDWARD ARCHER, Plaintiff and Appellant, v.
ELBERT F. SYBERT et al., Defendants and Respondents.

COUNSEL

A. Charles Dell'Ario for Plaintiff and Appellant.

Mark Gordy Henderson and Hiroshima, Jacobs & Roth for Defendants and Respondents.

OPINION

HANING, J.—Plaintiff/appellant Edward Archer appeals from a summary judgment granted to defendants/respondents Elbert and Michael Sybert in an action for damage to appellant's parked car caused by the negligent operation of respondents' vehicle by a thief. We affirm.

It is undisputed that the vehicle causing the accident was owned by respondent Elbert Sybert and on loan to his son, Michael, at the time of the theft. Michael left the car parked outside his residence in Redding, California on July 31, 1981, unlocked and with the keys in the ignition. Michael lived in a "middle-class residential neighborhood, not subject to a high incidence of crime." To his knowledge, "there was no history of car thefts in the immediate vicinity of [his] residence." The stolen vehicle was last seen by Michael at approximately 10:30 or 11:30 p.m. on the night of its theft. He first noticed it missing at 5:00 a.m. the next morning. Approximately 15 minutes later the stolen vehicle struck appellant's automobile in Hayward, California. The driver fled the scene and has not been apprehended. Appellant's vehicle is a 1926 Rolls Royce which required $50,000 and a considerable amount of time to repair.

The parties disagree whether a "For Sale" sign was displayed in the window of respondents' vehicle at the time of its theft. However, although

no reasons appear for its decision, we presume the trial court determined that the presence of the "For Sale" sign would not affect liability.

In *Richards* v. *Stanley* (1954) 43 Cal.2d 60 [271 P.2d 23], our Supreme Court established the underlying rule which guides us here. *Richards* similarly involved an action by a plaintiff who was struck by a stolen automobile operated by a thief who obtained access to the vehicle when the owner left it unattended with the keys in the ignition. *Richards* announced a rule of nonliability under such circumstances, noting that in the absence of a statute imposing such liability, "it has generally been held that the owner of an automobile is under no duty to persons who may be injured by its use to keep it out of the hands of a third person in the absence of facts putting the owner on notice that the third person is incompetent to handle it." (*Id.*, at p. 63.) Appellant advances the same argument urged by the plaintiff in *Richards:* that the high incidence of automobile thefts and negligent driving by thieves "were foreseeable consequences of leaving the key in the car . . . ." (*Id.*, at p. 64.) Stressing the legislative scheme of limited liability, the *Richards* court responded that "[i]n the absence of statute, however, we do not feel that [such factors] justify the recognition of a duty on the part of car owners to protect the public from the risk of the motoring activities of thieves, when to do so would result in imposing greater liability than is now provided by statute when the owner voluntarily entrusts his car to another. (See [former] Veh. Code, § 402.)"[1] (*Id.*, at p. 65.) "[T]he basic problem is really not one of negligence on the part of the owner, but rather whether or not the hazards inherent in the use of automobiles are so great that liability should be imposed on the owner without fault for any damage done by the operation of his vehicle. The Legislature has imposed such liability within limits by providing that the negligence of a driver using an automobile with the express or implied consent of the owner shall be imputed to the owner. If it is to be extended further it is for the Legislature and not for the court to do so." (*Id.*, at p. 68.)

However, *Richards* implied that not all possible avenues to liability were foreclosed, and hinted at guidelines for the subsequent imposition of liability in such situations, by noting that the defendant "did not leave her car in front of a school where she might reasonably expect irresponsible children to tamper with it [citation], nor did she leave it in charge of an intoxicated passenger. . . . By leaving the key in her car she at most increased the risk that it might be stolen. Even if she should have foreseen the theft, she had no reason to believe that the thief would be an incompetent driver." (*Id.*, at p. 66.)

---

[1]Currently Vehicle Code section 17151.

In *Richardson* v. *Ham* (1955) 44 Cal.2d 772 [285 P.2d 269], *Richards* was held inapplicable to circumstances where a 26-ton bulldozer was left unlocked and operable at a construction site and three intoxicated young men started it, causing considerable damage. The Supreme Court reasoned that the operation of such equipment was beyond the realm of common experience, and the potential for harm when the vehicle was being operated by an untrained person was so evident that it was reasonably foreseeable that injury would occur if the machine were left unattended in an operable condition. The court specifically noted that bulldozers attract spectators and that young persons were known to climb on them.

In *Hergenrether* v. *East* (1964) 61 Cal.2d 440 [39 Cal.Rptr. 4, 393 P.2d 164], the Supreme Court again addressed this issue and explained that "*Richards* would not bar the door to recovery in all cases. Special circumstances which impose a greater potentiality of foreseeable risk or more serious injury, or require a lesser burden of preventative action, may be deemed to impose an unreasonable risk on, and a legal duty to, third persons." (*Id.*, at p. 444.) Rather than attempting to lay down a rule applicable to all cases where ignition keys are left in vehicles, the court adopted an evolutionary approach to the problem, holding that "each case must be considered on its own facts to determine whether the joint effect of them in toto justifies the conclusion that the foreseeable risk of harm imposed is unreasonable, and that the defendant owner or one in charge of a vehicle has a duty to third persons in the class of the plaintiffs to refrain from subjecting them to such risk." (*Id.*, at p. 445.) The factors deemed significant enough to impose liability in *Hergenrether* were "(1) the vehicle was left in a neighborhood which was frequented by persons who had little respect for the law and the rights of others; (2) the neighborhood was heavily populated by drunks and near drunks; (3) the vehicle was intended to be left there for a relatively long period of time—from mid-afternoon to the following morning—and, of particular importance, it was intended that it would be left for the entire night; and (4) the vehicle was a partially loaded 2-ton truck, the safe and proper operation of which was not a matter of common experience, and which was capable of inflicting more serious injury and damage than an ordinary vehicle when not properly controlled." (*Ibid.*) The court commented that the location in which the unattended vehicle was left "constituted an unusual invitation to theft." (*Id.*, at p. 446.)

The Courts of Appeal have published three decisions to date where special circumstances were found which caused them to depart from the nonliability rule of *Richards* and impose liability in accord with *Hergenrether*. The first, *Murray* v. *Wright* (1958) 166 Cal.App.2d 589 [333 P.2d 111], preceded *Hergenrether*, but was cited with approval by the *Hergenrether* court in its decision. *Murray* overruled a demurrer and found special circumstances

sufficient to establish liability in a used car dealer where it was alleged that he purposely left the cars on his lot unlocked and with the keys in the ignition with the purpose of encouraging the general public to inspect and drive the vehicles, without any regard for their ability to drive. It was further alleged that the practice of the dealer was common knowledge in the area. (It was also alleged in other causes of action that the driver was intoxicated, but the court did not base its ruling on this allegation.)

The second, *Grafton* v. *Mollica* (1965) 231 Cal.App.2d 860 [42 Cal.Rptr. 306], reversed a directed verdict for the defendant. A motorist left his 27-month-old nephew alone in the front seat of his car with the engine running while a service station attendant was working under the hood. The attendant was injured when the car lurched forward. Although not a theft or joyriding case, *Grafton* reemphasized the element of foreseeability.

The third, *Enders* v. *Apcoa, Inc.* (1976) 55 Cal.App.3d 897 [127 Cal.Rptr. 751], attached liability to a parking lot with a history of prior thefts where a car was left with the keys in the ignition and only one attendant on duty. The car was stolen and thereafter involved in an accident, injuring a police officer who was pursuing the stolen vehicle. *Enders* found the resulting injury to be a foreseeable consequence and reversed a summary judgment for the defendant.[2]

In the following cases the Courts of Appeal have ruled against liability: *Holder* v. *Reber* (1956) 146 Cal.App.2d 557 [304 P.2d 204], involved facts which were virtually indistinguishable from *Richards* v. *Stanley, supra,* 43 Cal.2d 60, and a demurrer was upheld.

*Brooker* v. *El Encino Co.* (1963) 216 Cal.App.2d 598 [31 Cal.Rptr. 24], involved an action against a restaurant based on theft of a customer's car which was parked in the restaurant parking lot by one of the restaurant employees and left unattended with the keys in the ignition. The thief caused an accident when attempting to elude the police. *Brooker* is irreconcilable with *Enders* v. *Apcoa, Inc., supra,* 55 Cal.App.3d 897, and the *Enders* court specifically declined to follow it.

In *England* v. *Mapes Produce Co.* (1965) 238 Cal.App.2d 120 [47 Cal.Rptr. 506], a court trial revealed that a farm operator left a pickup truck parked overnight in a farm labor camp with the keys in the ignition.

---

[2]In light of the subsequent evolution of the "fireman's rule," it is unlikely that a policeman would recover under these circumstances today. (See *Hubbard* v. *Boelt* (1980) 28 Cal.3d 480 [169 Cal.Rptr. 706, 620 P.2d 156].) However, *Enders'* scope of foreseeability extended to "innocent third parties" as well as policemen, and the "fireman's rule" does not detract from *Enders'* basic holding.

It was taken without his permission by one of the farm laborers, who negligently caused an accident. The laborers were unable to operate motor vehicles competently in California, and this was known to the farm operator, who nevertheless made it a practice to park his trucks in that manner. He had never before had a truck taken by a laborer. The trial court found that the farm operator was not negligent. On appeal the plaintiffs urged the court to find that negligence existed as a matter of law, but the defense judgment was upheld, the Court of Appeal holding that the issue of foreseeability was for the finder of fact.

In *Hosking* v. *San Pedro Marine, Inc.* (1979) 98 Cal.App.3d 98 [159 Cal.Rptr. 369], the owner of a pickup truck drove it at night "to his mother-in-law's residence, left the truck unattended in an alley nearby with the lights on, the door open, the key in the ignition, and the engine running. The area was a half block from San Pedro High School. When [he] returned about two minutes later, he found the truck had been taken without his consent." (*Id.*, at p. 100.) The accident giving rise to the lawsuit was caused when the thief ran a stop sign while attempting to elude the police, and struck the plaintiff. The majority opinion was critical[3] of *Richards,* but nevertheless denied liability on the basis thereof.

Finally, in *Kiick* v. *Levias* (1980) 113 Cal.App.3d 399 [169 Cal.Rptr. 859], another division of this court upheld a summary judgment for the defendant who had her car stolen while it was parked in front of her residence with the keys in it. No "special circumstances" which would remove the case from the ambit of *Richards* were present. In an opinion which hinted at a willingness to let the factfinder determine foreseeability, the court recognized that "*Richards* is binding upon us, however, not only by its own weight as authority but through subsequent affirmation as well." (*Id.*, at pp. 405-406, fn. omitted, citing *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316], which in turn cited *Richards* with approval.) However, *Kiick* noted: "Appellant argues that the degree of foreseeability of harm to third persons is no less in the case of one who leaves car keys in or near an automobile than it is in the case of one who furnishes alcoholic beverages to an intoxicated person, and that in any event (there being no countervailing statute or public policy which would justify denial of recovery) he is entitled to have that question determined by the jury.

"Were we not bound by *Richards* we might well find appellant's reasoning persuasive. Insofar as the issue is one of foreseeability, it is certainly a

---

[3]The majority opinion in *Hosking* felt that *Richards* should be reexamined in light of statistical data demonstrating an increase in vehicle thefts. (*Hosking* v. *San Pedro Marine, Inc.*, *supra*, 98 Cal.App.3d at pp. 104-105, fn. 4.)

matter of common knowledge that the risk of auto thefts in metropolitan areas has increased substantially over the years since that decision; and it is at least arguable that auto thefts are more likely to occur when keys are left in or about the car, that vehicles operated by thieves are more likely to end up in accidents, and that city dwellers should be held to knowledge of these matters.

"Insofar as the issue calls for an overall policy determination under the heading of duty, a weighing of relevant factors in addition to foreseeability arguably inclines toward liability as well: the burden upon the defendant in exercising due care is slight, the imposition of liability may increase citizen diligence, and insurance against such risks by owners (assuming liability based on negligence) is presumably both available and prevalent. Thieves, by contrast, are not likely to carry applicable liability insurance, and absent liability on the part of the owner, the entire burden of the accident would fall upon the wholly innocent victim." (*Id.*, at pp. 404-405; fns. omitted.)

Thus, in the Courts of Appeal, the cases denying liability are a mixed lot. *Holder* and *Kiick* present factual situations identical to *Richards,* so their results present no surprises. *England* proceeded to court trial and foreseeability was submitted to the finder of fact. Consequently, unlike the other decisions, it did not rule out liability as a matter of law. *Hosking* presented more of an invitation to theft as noted by *Murray* and *Hergenrether,* but reluctantly followed *Richards. Brooker* cannot be reconciled with *Enders,* and the latter has been cited as example by the Supreme Court in *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893].

In *Palma* the Supreme Court was reviewing the grant of a peremptory writ of mandate. The underlying case concerned another key-in-the-ignition situation. The defendant's large commercial truck had been left unlocked with keys in it overnight, in an open parking lot adjacent to the street, in a high crime industrial area with a transient population.

In concluding that these circumstances were sufficiently "special" to remove the case from the *Richards* umbrella, and required foreseeability to be determined by the jury, the court stated: "Whether Fasteners could foresee that leaving its truck overnight, unlocked, on a lot adjacent to the street, in this industrial city with a transient population and a high crime rate, was an invitation to theft (see *Enders* v. *Apcoa, Inc.* (1976) 55 Cal.App.3d 897 [127 Cal.Rptr. 751]) by persons not competent to safely operate the trucks and who might cause serious injury or damage to third persons and their property while attempting to operate the trucks is a question of fact for the jury to determine. "The 'special circumstance' to which we look in determining whether the owner operator of a vehicle owes a duty to third parties

in the manner in which the vehicle is secured when not in use [is] nothing more than a test of foreseeability of harm. In negligence a defendant may be liable for injuries caused by his failure to use reasonable care in situations in which he owes a duty to the injured person. '[I]n considering the existence of "duty" in a given case several factors require consideration including "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]" (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113; . . . .)'" (*Palma* v. *U.S. Industrial Fasteners, Inc., supra,* 36 Cal.3d at p. 186.)

Referring to *Hosking* and *Kiick, Palma* did not question "the continued viability of *Richards* in light of subsequent legal developments and empirical research." (*Palma* v. *U.S. Industrial Fasteners, Inc., supra,* 36 Cal.3d at p. 186, fn. 13.) Appellant here asks us to do so, pointing to the statistical data referred to by the *Hosking* and *Kiick* courts, as well as that which he submitted to the trial court. According to a California Highway Patrol Vehicle Theft Arrest Survey, we note the following factors: (1) Keys left in the ignition accounted for 47 percent of vehicle thefts. (2) Fords and Chevrolets were stolen more than any other make. (Respondents' car is a Ford.) (3) The average age of stolen vehicles is over seven years. Respondents' vehicle was a 1966 model year. (4) 64.7 percent of cars stolen are taken from incorporated areas, such as in the instant case. (5) Over 15 percent of stolen cars are in a wrecked condition when recovered. (6) 37 percent of stolen vehicles are involved in traffic violations, and 6 percent in accidents leading to the arrest of the driver. National statistics updated through 1980 reveal that California has a rate of automobile thefts which is 50 percent higher than the national average. Redding itself is above the national average for 1980.

█ Were it not for *Richards,* we too might be persuaded to rule differently. However, the mere presence of the "For Sale" sign, although obviously designed to attract attention, does not create a circumstance sufficiently "special" to render *Richards* inapplicable. Without reference to the statistical data on auto thefts, the character of the neighborhood in the instant case does not reasonably put the vehicle owner on notice that the car is likely to be stolen, let alone by an incompetent driver. (*Richards* v. *Stanley, supra,* 43 Cal.2d 60.) It is an ordinary automobile, requiring no extraordinary skill or experience to operate. Absent facts removing the case from coverage under the *Richards* rule, we are obligated to apply it. (*Auto*

*Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455-456 [20 Cal.Rptr. 321, 369 P.2d 937].) It may be time to reexamine *Richards,* but such action can come only from the Legislature or the Supreme Court.

Judgment affirmed.

Low, P. J., and King, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 17, 1985.