[No. A057731. First Dist., Div. Three. Jan. 11, 1993.]

AVIS RENT A CAR SYSTEM, INC., Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
JULIA KOCH et al., Real Parties in Interest.

222

COUNSEL

James R. Heisey and Michael F. O'Leary for Petitioner.

No appearance for Respondent.

Seltzer & Cody and Richard A. Seltzer for Real Parties in Interest.

OPINION

CHIN, J.—Avis Rent A Car System, Inc. (Avis), is being sued by a motorist injured when her car was rammed by a stolen Avis vehicle being chased from the scene of a shoplifting. Avis's liability is premised upon its failure to take adequate precautions to prevent theft of its vehicles. We conclude that the "special circumstances" doctrine arising from the California Supreme Court decision in *Richards* v. *Stanley* (1954) 43 Cal.2d 60, 65-66 [271 P.2d 23], the only plausible basis for Avis's liability, does not stretch this far. We order issuance of a writ of mandate to compel the superior court to grant summary judgment for Avis.

*Facts and Procedures*

The facts and inferences most favorable to plaintiffs Julia and Fred Koch show that at its location at the San Francisco Airport, Avis leaves keys in

rental cars for as long as 45 minutes during the check-in process. During this time they are moved around to be cleaned, washed, and refueled. When these procedures are completed, the cars are moved to storage lots, and the keys are removed. There is no fence or wall around the check-in lot and no guarded gate where cars leaving that lot may be examined. Although Avis does employ security guards, security is inadequate.

Before this incident, Avis had been warned about security problems, and other cars had been stolen from the check-in area. In fact, Jacqueline W., the driver responsible for Julia Koch's injuries, was convicted of an earlier theft of a vehicle from the Avis check-in lot and was committed to the California Youth Authority. On that occasion, Jacqueline W. wore a red jacket to blend in with the Avis drivers moving cars off the check-in lot. An Avis employee unsuccessfully attempted to stop her.

On May 26, 1989, a Pontiac GrandAm owned by Avis apparently was stolen from the check-in lot. Although the car was missing from computer control on that date, Avis did not report it to the police. Under Avis's procedures a car missing from computer control is not reported stolen for a period of two to three weeks.

Seven days and one thousand, two hundred sixty-five odometer miles later, Jacqueline W. was driving the missing car in Emeryville, California. An employee of the Copeland's sporting goods store, having observed shoplifting, reported a burglary in progress. An Emeryville police officer arrived and saw four women rushing from the store to the GrandAm, chased by a Copeland's security guard. The police officer tried to stop them, but they reached the car and sped away.

A high-speed chase took place, during which Jacqueline W. drove the GrandAm on the wrong side of the street, struck two or three vehicles, and drove on the rim after losing a tire. The chase ended when the GrandAm ran a stop sign and collided broadside with Julia Koch's vehicle.

Julia and Fred Koch sued Avis for personal injuries and loss of consortium, alleging negligence leading to the theft and use of the Avis vehicle by a foreseeably negligent driver. They alleged that despite an awareness of the high incidence of vehicle theft from its lot and the lots of other rental companies at the airport, Avis maintained the following policies: "a. Leaving keys in the ignitions of cars returned by car lessors to SFO [the San Francisco Airport]; [¶] b. Allowing rental cars returned to SFO to be parked, unlocked, and left unattended in an area with inadequate security; [¶] c. Maintaining inadequate security which thereby allowed non-AVIS employees to have access to unattended vehicles with keys in the ignition; [¶] d.

Having no effective procedure to ensure that non-AVIS employees and non-lessors would be precluded from driving rental vehicles off the Avis lot at SFO; [¶] e. Having inadequate procedures for identifying cars missing and unaccounted for from the AVIS lot at SFO; [¶] f. Having inadequate procedures, given the high incidence of theft, for reporting missing and unaccounted for vehicles to local Police Agencies."

Avis moved for summary judgment. After hearing, the court denied the motion on the ground that "there are triable issues of fact regarding the defendant's security and control measures at it's [sic] check-in lot located at San Francisco International Airport and whether it was foreseeable to defendant that vehicles stolen from said lot could later injure innocent third persons such as the plaintiff Julia Koch." Instead of specifically identifying evidence showing disputed facts, as required by Code of Civil Procedure section 437c, subdivision (g) (see *Continental Ins. Co.* v. *Superior Court* (1985) 165 Cal.App.3d 1069, 1071-1072 [212 Cal.Rptr. 140]), the court only listed the numbers of all 19 paragraphs in which Julia and Fred Koch summarized their disagreements with the Avis statement of material facts.

This petition for writ of mandate followed. Although the court's order is inadequate and could be set aside on that ground, we address the merits of Avis's motion for summary judgment. We conclude that the court erred in denying the motion.

### The "Special Circumstances" Doctrine

In a series of key-in-the-ignition cases, the California Supreme Court has announced principles identified as the "special circumstances" doctrine (see *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 183-186 [203 Cal.Rptr. 626, 681 P.2d 893], and cases cited therein.) In the seminal case, *Richards* v. *Stanley, supra,* 43 Cal.2d 60, the complaint alleged that Mrs. Stanley left the Stanleys' car on Stevenson Street near Second Street in San Francisco " 'unattended and unlocked with the ignition key in said car lock.' " (*Id.,* at p. 61.) Codefendant Rawlings stole the car. Later that day, the car driven by Rawlings struck plaintiff Richards as he was riding his motorcycle in another part of the city.

The *Richards* court affirmed a nonsuit against Richards, finding that the Stanleys owed Richards no duty: "In one sense the problem presented involves the duty of the owner of an automobile so to manage it as not to create an unreasonable risk of harm to others. It bears emphasis, however, that when Mrs. Stanley left the car it was in a position where it could harm no one, and no harm occurred until it had been taken by a thief. Thus a duty

to prevent such harm would involve more than just the duty to control the car, it would involve a duty to prevent action of a third person. Ordinarily, however, in the absence of a special relationship between the parties, there is no duty to control the conduct of a third person so as to prevent him [or her] from causing harm to another. [Citations.] . . ."

"In the present case Mrs. Stanley did not leave her car in front of a school where she might reasonably expect irresponsible children to tamper with it (see Restatement, Torts, § 302, illus. 7), nor did she leave it in charge of an intoxicated passenger as did defendant in *Morris* v. *Bolling* [1948], 31 Tenn.App. 577 [218 S.W.2d 754]. By leaving the key in her car she at most increased the risk that it might be stolen. Even if she should have foreseen the theft, she had no reason to believe that the thief would be an incompetent driver. In view of the fact that the risk of negligent driving she created was less than the risk she might intentionally have created without negligence by entrusting her car to another, and in light of the rule that she owed no duty to protect plaintiff from harm resulting from the activities of third persons, we conclude that her duty to exercise reasonable care in the management of her automobile did not encompass a duty to protect plaintiff from the negligent driving of a thief." (*Richards* v. *Stanley*, *supra*, 43 Cal.2d at pp. 65-66.)

A year later, the California Supreme Court addressed the "special circumstances" doctrine again, this time finding that a duty existed. In *Richardson* v. *Ham* (1955) 44 Cal.2d 772 [285 P.2d 269], a contractor left two 26-ton bulldozers on a construction site at the top of a mesa. One was locked, but an important component of the locking system was missing from the other. Three intoxicated young men started the partially locked bulldozer, drove it, causing considerable damage, and then abandoned it when they could not stop it. It traveled about a mile without a driver, crashing into a house, a house trailer, and a car, and causing further property damage and personal injuries. Plaintiffs, whose persons or property were in the bulldozer's path, brought actions against the contractor for negligently leaving the bulldozer unattended and unlocked.

The *Richardson* court first distinguished *Richards* based on foreseeability: "Automobiles do not arouse curiosity, and ordinarily the only appreciable risk that they will be set in motion if they are left unattended arises from the possibility of their being stolen. The record in the present case, on the other hand, shows that defendants' bulldozers aroused curiosity and attracted spectators, while they were in operation as well as while they were parked for the night. Moreover, curious persons had been known to climb on them, and it could reasonably be inferred that they were attractive to children when

left unattended at the end of the working day. The evidence is therefore sufficient to justify the conclusion that there was a reasonably foreseeable risk that defendants' bulldozers might be tampered with when left unattended." (*Richardson* v. *Ham, supra,* 44 Cal.2d at p. 776.)

*Richardson* then distinguished *Richards* on the duty issue: "In the Richards case it was concluded that even if theft was reasonably to be foreseen, the owner was under no duty to persons on the highway to exercise reasonable care to keep his car out of the hands of a thief. It was pointed out that the owner will ordinarily have no reason to foresee that a thief will be an incompetent driver . . . . The risks arising from intermeddling with bulldozers, however, are entirely different from those arising from the driving of an automobile by a thief. Bulldozers are relatively uncommon, and curious children or others attracted by them ordinarily will not know how to operate them. An intermeddler who starts a bulldozer accidentally or otherwise may not be able to stop it, and the potentialities of harm from a 26-ton bulldozer in uncontrolled motion are enormous, particularly when it is left on top of a mesa from which it can escape and injure persons and property located below." (*Richardson* v. *Ham, supra,* 44 Cal.2d at p. 776.)

More recently, the California Supreme Court has distinguished *Richards* in two cases involving keys left in trucks and in a case involving a truck-mounted "aerial manlift." The defendants in *Hergenrether* v. *East* (1964) 61 Cal.2d 440 [39 Cal.Rptr. 4, 393 P.2d 164] left a two-ton truck overnight in a skid row area of Redding, unlocked and unattended, with keys in the ignition and valuable property in the truck cab and bed. The *Hergenrether* court found that "special circumstances" existed because "(1) the vehicle was left in a neighborhood which was frequented by persons who had little respect for the law and the rights of others; (2) the neighborhood was heavily populated by drunks and near drunks; (3) the vehicle was intended to be left there for a relatively long period of time—from midafternoon to the following morning—and, of particular importance, it was intended that it would be left for the entire night; and (4) the vehicle was a partially loaded 2-ton truck, the safe and proper operation of which was not a matter of common experience, and which was capable of inflicting more serious injury and damage than an ordinary vehicle when not properly controlled." (*Id.,* at p. 445.) The court found that "the parking of the truck during daylight hours while drunks, derelicts and vagrants who frequented the neighborhood could observe that the vehicle was unlocked and the key in the ignition, and continuing such parking throughout the night, constituted an unusual invitation to theft." (*Id.,* at pp. 445-446.)

Predictably, the court reached the same result in *Palma* v. *U.S. Industrial Fasteners, Inc., supra,* 36 Cal.3d 171, where the evidence showed that

defendant parked a large flatbed truck overnight in an unfenced lot in a high-crime area with keys inside, door unlocked, and window open. The *Palma* court found a triable issue of foreseeability, stating principles which it clarified in a later case: "The 'special circumstance' to which we look in determining whether the owner operator of a vehicle owes a duty to third parties in the manner in which the vehicle is secured when not in use is nothing more than a test of foreseeability of harm. In negligence a defendant may be liable for injuries caused by his failure to use reasonable care in situations in which he owes a duty to the injured person." (*Id.*, at p. 186.)

In *Ballard* v. *Uribe* (1986) 41 Cal.3d 564 [224 Cal.Rptr. 664, 715 P.2d 624], the Supreme Court found a duty, sustained a jury verdict for plaintiff, and clarified *Palma* by explaining the role of foreseeability in determining whether defendant bore a duty toward plaintiff. Defendant was a subcontractor who brought an "aerial manlift" (a basket mounted on a boom ladder attached to a truck) to the construction site and left it there for several weeks. An employee of the general contractor sustained injuries in a fall while using the lift to reach a high place. Both the subcontractor and the general contractor's project manager realized that a cable on the lift needed to be replaced and that the lift should not be used before repairs were finished, but the subcontractor parked the vehicle with the keys in the ignition, the controls unlocked, and no warning signs.

The trial court in *Ballard* improperly instructed the jury on the issue of duty, but the Supreme Court found the error harmless because it was clear under *Richardson* and *Hergenrether* that defendant did bear a duty. (*Ballard* v. *Uribe, supra,* 41 Cal.3d at pp. 572-573.) The court noted that "[t]he *Richardson* decision itself—the first case to apply the 'special circumstances' exception in recognizing duty—establishes that the significant danger posed by the unauthorized use of heavy construction machinery warrants recognition of a duty on the part of machinery owners to use due care to prevent the injurious misuse of the machinery by others." (*Ballard, supra,* at p. 573.) The court found the conclusion equally applicable to the owner of an aerial manlift. (*Ibid.*)

*Ballard* took pains to clarify procedures: "Some confusion has arisen over the respective roles played by the court and the jury in determining liability in the *Richards* v. *Stanley, Richardson,* and *Hergenrether* context. The confusion may stem, at least in part, from the fact that the 'foreseeability' concept plays a variety of roles in tort doctrine generally; in some contexts it is a question of fact for the jury, whereas in other contexts it is part of the calculus to which a court looks in defining the boundaries of 'duty.'

"The question of 'duty' is decided by the court, not the jury. [Citations.] As this court has explained, 'duty' is not an immutable fact of nature ' "but

only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." ' [Citations.] In California, the general rule is that all persons have a duty ' "to use ordinary care to prevent others being injured as the result of their conduct. . . ." ' (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561] (citations omitted); Civ. Code, § 1714.) *Rowland* enumerates a number of considerations, however, that have been taken into account by courts in various contexts to determine whether a departure from the general rule is appropriate: 'the major [considerations] are *the foreseeability of harm to the plaintiff,* the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' (Italics added [by the *Ballard* court].) [Citation.] The foreseeability of a particular kind of harm plays a very significant role in this calculus [citation], but a court's task—in determining 'duty'—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.

"The jury, by contrast, considers 'foreseeability' in two more focused, fact-specific settings. First, the jury may consider the likelihood or foreseeability of injury in determining whether, in fact, the particular defendant's conduct was negligent in the first place. Second, foreseeability may be relevant to the jury's determination of whether the defendant's negligence was a proximate or legal cause of the plaintiff's injury." (*Ballard* v. *Uribe,* *supra,* 41 Cal.3d at pp. 572-573, fn. 6.)

### *Application of the "Special Circumstances" Doctrine*

■ If only the California Supreme Court and not the Court of Appeal had written about the "special circumstances" doctrine, we would have little difficulty finding that Avis was under no duty to prevent a thief from injuring another motorist. The Supreme Court cases show that "special circumstances" exist when heavy vehicles are left unattended and available for use by those not accustomed to driving them. The incident here involved an ordinary car, not heavy equipment.

Only a *Richards* dictum suggests that an owner might be liable under some circumstances for leaving keys in an ordinary automobile: "Mrs.

Stanley did not leave her car in front of a school where she might reasonably expect irresponsible children to tamper with it [citation] . . . ." (*Richards* v. *Stanley, supra,* 43 Cal.2d at p. 66.) The "special circumstance" of making a car available to irresponsible children is similar to the invitation for others to tamper with heavy equipment they are incompetent to drive. The court's dictum thus explained only that one has a duty not to invite or entice others to tamper with vehicles they are incompetent to drive.

With two exceptions, the Court of Appeal opinions involving ordinary automobiles or pickup trucks have found no duty to protect a person injured by an adult thief. Before discussing the exceptions, we discuss the cases finding no duty. In *Holder* v. *Reber* (1956) 146 Cal.App.2d 557 [304 P.2d 204], decided two years after *Richards,* the court affirmed a ruling sustaining a demurrer to a complaint with allegations similar to those in *Richards.* In *Brooker* v. *El Encino Co.* (1963) 216 Cal.App.2d 598 [31 Cal.Rptr. 24], a case somewhat similar to this case, the court affirmed summary judgment in favor of a restaurant whose employee parked a patron's car with the keys in the ignition. Plaintiffs in *Brooker* were injured when the thief crashed the stolen car into their car while attempting to evade the police. The *Brooker* court noted that the risk of reckless driving to avoid apprehension was also present and foreseeable in *Richards.* (*Brooker, supra,* at p. 602.)

In *Hosking* v. *San Pedro Marine, Inc.* (1979) 98 Cal.App.3d 98 [159 Cal.Rptr. 369], defendant's pickup truck was stolen while sitting unattended in an alley near a residence at night with the lights on, the door open, the key in the ignition, and the engine running. During a police chase two days later, the truck ran a stop sign and collided with plaintiff's automobile. Plaintiff's offer of proof included evidence that the auto theft rate in the area was higher than in the rest of the state, the particular model of vehicle was popular with juvenile auto thieves, the theft was one block from a high school, a vehicle is more likely to be stolen at night, a stolen vehicle is very likely to be involved in a chase, and that the rate of accidents in stolen vehicles was higher than other vehicles. While suggesting that the Supreme Court reexamine *Richards* in light of empirical data about automobile theft and the incidence of accidents in stolen vehicles, the *Hosking* court affirmed a superior court determination that these were not "special circumstances," and the defendant owed no duty. (*Hosking, supra,* at pp. 104-106, fn. 4 and accompanying text.)

The two most recent decisions on the key-in-the-ignition issue have repeated the suggestion that the Supreme Court reexamine *Richards,* but have found that "special circumstances" did not exist. (See *Archer* v. *Sybert* (1985) 167 Cal.App.3d 722, 729-730 [213 Cal.Rptr. 486]; *Kiick* v. *Levias*

(1980) 113 Cal.App.3d 399, 404-406 [169 Cal.Rptr. 859].) Both involved cars parked in residential neighborhoods not noted for auto theft. Although aware of this criticism, the California Supreme Court has on two occasions declined to reexamine the basis for *Richards*. (See *Ballard* v. *Uribe, supra*, 41 Cal.3d at p. 572, fn. 5; *id.*, at pp. 585-586 (conc. and dis. opn. of Bird, C. J.); *Palma* v. *U.S. Industrial Fasteners, Inc., supra*, 36 Cal.3d at p. 186, fn. 13; but see *Reteneller* v. *Putnam* (Fla.Dist.Ct.App. 1991) 589 So.2d 328, 330-331; *Zinck* v. *Whelan* (1972) 120 N.J.Super. 432 [294 A.2d 727, 728-737] and cases cited therein for discussion of out-of-state decisions disagreeing with *Richards*.)

Only two Court of Appeal key-in-the-ignition decisions have found that the "special circumstances" required by *Richards* existed. We conclude that the first is consistent with the *Richards* line of cases, but is not persuasive here because its facts are quite different from this case. We decline to follow the second decision, which we conclude improperly extended the "special circumstances" doctrine.

In the first case, *Murray* v. *Wright* (1958) 166 Cal.App.2d 589 [333 P.2d 111], the complaint alleged that defendants, used car dealers, at all times left cars unlocked and keys in the ignitions to encourage the general public to inspect and test drive the cars. The complaint further alleged that knowledge of this policy was common to the general public and that this carelessness encouraged an intoxicated driver to operate one of the vehicles. The *Murray* court found that these allegations met the standards of *Richards*. The California Supreme Court has cited *Murray* approvingly. (*Palma* v. *U.S. Industrial Fasteners, Inc., supra*, 36 Cal.3d at p. 185; *Hergenrether* v. *East, supra*, 61 Cal.2d at pp. 444-445.)

Although it involved only ordinary vehicles, *Murray* is consistent with the Supreme Court's "special circumstances" decisions. The conduct of the *Murray* defendants was similar to the *Richardson* defendants' invitation to incompetent drivers to tamper with bulldozers and to the *Richards* dictum about leaving a key in the ignition in front of a school. In fact, in *Murray*, the invitation was more open than in either *Richardson* or the *Richards* dictum. *Murray* is not persuasive authority for finding a duty in this case because Avis in no way invited or enticed incompetent drivers to use its cars. At most it was negligent in not preventing experienced auto thieves from stealing its cars from an attended lot.

### Extension of the "Special Circumstances" Doctrine

The second of the decisions finding "special circumstances," *Enders* v. *Apcoa, Inc.* (1976) 55 Cal.App.3d 897 [127 Cal.Rptr. 751], used questionable reasoning and stretched the "special circumstances" doctrine too far. In

*Enders*, the defendant company routinely parked cars in its Beverly Hills parking lot with keys in the ignitions. During a police chase more than 24 hours after the theft, the stolen car, driven by a minor, collided with the plaintiff police officer's vehicle. The trial court granted summary judgment in favor of the parking lot defendant. On appeal, the *Enders* court reversed.

After a review of decisional law, *Enders* enumerated the "special circumstances" plaintiff claimed were present in the case. First was the community knowledge that parking lots in general and this lot in particular require that patrons leave their keys in their vehicles so that attendants may move them. Second was the fact that only one attendant was on duty at a time, which "under certain circumstances [would] be as ineffectual in guarding against theft as no attendant at all." (*Enders* v. *Apcoa, Inc., supra,* 55 Cal.App.3d at p. 904.) Third was evidence of 12 vehicle thefts from defendant's 68 parking lots over a 3-year period before this theft. (*Ibid.*) Last was plaintiff's empirical data demonstrating that it is foreseeable that a stolen vehicle will be involved in an accident. (*Id.,* at p. 905.)

Without determining the validity of plaintiff's evidence, the *Enders* court concluded that these alleged facts were adequate to present the question of negligence. (*Enders* v. *Apcoa, Inc., supra,* 55 Cal.App.3d at p. 905.) Thus, at this stage of its discussion, the court appeared to find, based on unproven allegations, that the defendant had a duty to protect motorists from injury by drivers who might steal cars from the defendant's lot.

The court then backed off from its implicit finding of duty and explained: "Negligence alone, however, as religiously pointed out in the cases cited above, does not impose liability absent the existence of a duty of care owed by the alleged wrongdoer to the person injured or to a class of which the injured party is a member. *Brooker* concluded that there was no such duty where, during the police chase of the stolen car, damages resulted to a third party. *Brooker*[, *supra,* 216 Cal.App.2d at page 602] misreads *Richards* where it states: 'The risk that the thief might drive negligently or recklessly to avoid apprehension was a risk also present in *Richards* v. *Stanley, supra,* 43 Cal.2d 60.' In *Richards* there was no allegation of police involvement at the time of the negligent driving by the thief. At that moment, the thief was apparently merely negligent in his driving and was not acting with the added incentive of escape." (*Enders* v. *Apcoa, Inc., supra,* 55 Cal.App.3d at p. 905.)

In a confusing explanation, the *Enders* court then described how the "special circumstances" requirement of *Richards* was met by the *Enders* plaintiff: "Looking then to the 'special circumstances' (provided for in *Richards*) which go to *duty,* not to the *negligence* of leaving the keys in the

car, we have no doubt that the police intervention was foreseeable. Likewise, we believe that it was foreseeable that during that police intervention the thief would attempt evasion from arrest. The negligent driving during such a course of attempted escape would be expected and therefore patently foreseeable. Where it is foreseeable that the manner of driving will be negligent, the likelihood of injury to the arresting officer and/or to innocent third parties is also foreseeable. Under such circumstance, the result of injury being foreseeable, there arises the duty not to conduct oneself in such a negligent way as to be a cause of the injury; in such a situation, liability will be imposed absent an intervening factor which would fall within the ambit of unforeseeability. [Citation.]" (*Enders v. Apcoa, Inc., supra,* 55 Cal.App.3d at p. 905.)

In this passage *Enders* explained duty solely in terms of foreseeability. *Palma* thereafter cited *Enders* as an example of "special circumstances" and explained that the "special circumstances" doctrine is "nothing more than a test of foreseeability of harm." (*Palma v. U.S. Industrial Fasteners, Inc., supra,* 36 Cal.3d at p. 186.)

On the surface, *Palma*'s approval of *Enders* would seem to close the door on any inquiry into whether *Enders* correctly applied the "special circumstances" doctrine. (See *Archer v. Sybert, supra,* 167 Cal.App.3d at p. 728.) However, the footnote in *Ballard,* quoted in full above (*ante,* at pp. 227-228), invites us to reopen the inquiry. Without identifying *Palma* and *Enders* as sources of previous confusion, *Ballard* explained that foreseeability of harm is only one factor in the calculus for determining duty and that the court's task is not to decide whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but to evaluate "generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." (*Ballard v. Uribe, supra,* 41 Cal.3d at p. 573, fn. 6.)

Examining *Enders* in the light shed by *Ballard,* we conclude that *Enders,* not *Brooker,* misinterpreted *Richards.* Although *Richards* did not involve a police chase, injuries to motorists in police chases (as a general kind of harm) were as much a foreseeable result from leaving a key in the ignition (a category of negligence) in *Richards* as they were in *Enders.* Yet, for policy reasons the *Richards* court found no duty. Even the possibility of injury during a police chase was not the "special circumstance" which would create a duty to protect a motorist from negligent driving by a thief.

By focusing on foreseeability, the *Enders* court bypassed the important policy questions involved in the duty analysis. *Richards* and the decisions

following it have confirmed that, however foreseeable car theft and an accident by the thief may be, leaving an ordinary automobile unattended on the street with a key in the ignition does not create a duty to protect other motorists from the negligent driving of a thief.

We conclude that Avis's conduct of parking its cars in a negligently attended lot with keys in the ignitions did not create a duty to control the conduct of a thief. It is true that the risk of theft increases when more cars are involved and when they are in a fixed location. Thieves may learn about the target cars and may find ways to defeat the security provided. But this increase in the risk of theft due to negligence of an owner of a fleet of cars is much like the increased risk associated with leaving keys in the ignition of a car left unattended on the street. It is not equivalent to inviting or enticing an incompetent driver to tamper with a vehicle. These actions are not the "special circumstances" which create a special relationship between or among the parties. Thus, they do not impose on the car owner the duty to control the actions of the thief.

Even if we were somehow to find the circumstances "special," we would not extend the duty to this accident. The duty, if it existed, would not be perpetual and unlimited in scope. We conclude, as a matter of law, that it would not extend to this accident: (1) in another county (2) one week later (3) during a police chase not caused by a report of the vehicle theft.

The superior court erred in denying Avis's motion for summary judgment.[1] We reach our conclusions with some reluctance because we understand the impact this ruling will probably have on the Kochs. They may have little chance of recovering from the real villain, Jacqueline W., who probably has neither significant assets nor insurance coverage for accidents in stolen vehicles. However, the mere fact that the villain may be "judgment proof" does not justify recovery against Avis, Jacqueline W.'s original victim.

Let a peremptory writ of mandate issue directing the Alameda County Superior Court to vacate its order denying Avis's motion for summary judgment and to enter a new order granting the motion.

Merrill, Acting P. J., and Werdegar, J., concurred.

---

[1]Our ruling in Avis's favor on the merits makes it unnecessary for us to address Avis's argument that the court improperly failed to rule on its evidentiary objections.